Argued November 3, 1966, reargued February 1, affirmed
March 22, petition for rehearing denied April 25, 1967

CALL ET UX, *Appellants, v.* JEREMIAH ET AL,
*Respondents.*

425 P. 2d 502

*Oliver Crowther,* Portland, argued and reargued the cause for appellants. With him on the briefs was Anthony Pelay, Jr., Portland.

*James C. Breathouwer,* Portland, argued the cause, and *Carlton R. Reiter,* Portland, reargued the cause for respondents. With them on the brief were Reiter, Day, Anderson & Wall, Portland.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and REDDING, Justices.

## O'CONNELL, J.

This suit was brought to foreclose a second mortgage after the first mortgage was foreclosed and the land was redeemed from the foreclosure sale by the grantees of the mortgagors. Plaintiffs appeal from a

decree in favor of defendants. The facts are as follows:

(1) On February 2, 1960, Duane and Patricia Mae Jeremiah executed a first mortgage to Pacific Mutual Life Insurance Company.

(2) On February 3, 1960, the Jeremiahs executed a second mortgage to plaintiffs, Albert and Eudora Call.

(3) On April 6, 1961, the Jeremiahs executed a deed to Mercer Steel Company.

(4) On March 21, 1962, Pacific Mutual Life Insurance Company brought suit against the Jeremiahs to foreclose the first mortgage. Albert and Eudora Call were joined as parties defendant but defaulted.

(5) On July 27, 1962, the decree of foreclosure was entered.

(6) On September 10, 1962, Pacific Mutual Life Insurance Company purchased at the foreclosure sale.

(7) On August 27, 1963, Mercer Steel Company executed a quitclaim deed to Robert and Patricia Blake.

(8) On August 27, 1963, Robert and Patricia Blake executed a quitclaim deed to Earl and Ethel Lawhead.

(9) On September 9, 1963, the Lawheads redeemed the property from the foreclosure sale.

(10) On December 9, 1963, the trustee in bankruptcy of the Jeremiahs executed a quitclaim deed to the Lawheads.

(11) On December 9, 1963, Earl and Ethel Lawhead executed a mortgage to Security Bank of Oregon.

(12) On May 25, 1964, the Calls brought the present suit to foreclose the second mortgage.

Plaintiffs in the present suit were joined as defendants in the foreclosure suit brought by Pacific Mutual Life Insurance Company, the first mortgagee. In the first foreclosure suit the decree provided that "the defendants above named, and each of them, and all persons claiming by, through or under them, or any of them, be forever barred and foreclosed of all right, title, interest, lien or equity in or to said real property and each and every portion thereof, except their statutory right of redemption."

Defendants, the grantees of the mortgagors, contend that since the decree expressly forecloses plaintiffs' mortgage interest in the property, the second mortgage is extinguished and plaintiffs' only remaining interest is a personal claim against the mortgagors for the payment of the loan.

Plaintiffs, on the other hand, contend that a second mortgage may be foreclosed after the foreclosure of a first mortgage, if the property is redeemed from the foreclosure sale by the mortgagor or his grantee.

■ *Ulrich v. Lincoln Realty Co.*, 180 Or 380, 168 P2d 582, 175 P2d 149 (1947), clearly establishes that a decree of foreclosure extinguishes a first mortgage and that when the land is redeemed by the mortgagor or his grantee the mortgage is not revived as to any deficiency on the foreclosure sale. The first mortgagee has, of course, the lien of a docketed judgment for the deficiency, but this lien dates from the docketing of

the judgment and does not have its source in the mortgage which is extinguished by the foreclosure decree.

In spite of the holding in *Ulrich,* plaintiffs argue that the foreclosure decree does not have the same effect upon a second mortgage, even where the language of the decree expressly forecloses that mortgage lien. They argue that they "were not actual adversaries in the prior proceeding" in relation to the present defendants and, therefore, are not bound by the judgment. Put in a different way, they argue that the mortgage sought to be foreclosed in the present suit was not the same claim, demand or cause of action presented in the prior mortgage foreclosure proceeding.

■ Plaintiffs misconceive the purpose of foreclosure proceedings and the effect of the foreclosure decree. The effect of the foreclosure decree is not simply to extinguish the interest of the mortgagee bringing the suit—it is designed to extinguish *all* interests which are subordinate to the foreclosing mortgagee's interest. This result is clearly pronounced in the decree itself. If a second mortgagee or other junior encumbrancer wishes to assert that his lien is prior to that of the plaintiff, or if he wants to obtain a deficiency judgment in the foreclosure proceedings rather than through a separate action on the debt, he is free to do so. But if he elects not to raise these or other questions, the decree will extinguish his mortgage lien.

If, as contended by plaintiffs, junior liens are not cut off by the decree during the redemption period, it would seem to follow that we have developed a system whereby the second mortgagee who "has been joined" in the first mortgagee's suit to foreclose can bring a second suit to foreclose during the redemption period and a third mortgagee can bring a third suit to fore-

close, and so on with other inferior lien claimants, as a consequence of which there is a multiplicity of litigation which serves no purpose that cannot be served in the original foreclosure suit. When one adds to this the fact that the junior encumbrancers have a right to bid in at the sale of the prior mortgage and also have a statutory right to redeem after sale, it should be apparent that no such system of litigation was contemplated for the foreclosure of mortgages.

This effect of the decree is explained in the various treatises on mortgages. Thus, in 2 Wiltsie, Mortgage Foreclosure, § 835 at pp. 1355-56 (5th ed 1939), the author says: "Where a subsequent mortgagee or lienor is made a party to the action or proceeding for the foreclosure of a prior mortgage, the judgment or decree therein destroys his lien, and upon the expiration of the time for redemption the purchaser is entitled to the property free from the lien. The subsequent mortgagee or lienor is remitted to the fund realized in the foreclosure proceedings above that required to satisfy all proper prior charges."[1] Our own cases express the same idea.[2]

---

[1] See also, 1 Glenn, Mortgages, § 86 at p. 510 (1943); Osborne, Mortgages, § 324 at pp. 944-45 (1951). Similarly, as was pointed out in Cowan v. Stoker, 100 Utah 377, 380, 115 P2d 153, 154 (1941):

"A junior mortgagee who is joined and properly served in an action by a senior mortgagee to foreclose his mortgage, whether or not he appears or pleads, is bound by the decree of foreclosure and may not thereafter assert a claim against said mortgaged property. * * * Upon foreclosure of the senior mortgage the lien of the junior mortgagee attaches to the surplus of the proceeds of the foreclosure sale."

[2] In Williams v. Wilson, 42 Or 299, 70 P 1031, 95 Am St Rep 745 (1902) the court asked: "Now, what is the status of a judgment lien creditor when he has been a party, regularly brought in, and becomes legally subject to the decree of foreclosure?" In answer, the court said: "If he desires to perpetuate his lien as it

Wiltsie's statement that "upon the expiration of the time for redemption the purchaser is entitled to the property free from his lien" is intended to explain that the purchaser takes the land at the end of the redemption period and that when he does the land is free from the lien. Wiltsie's preceding statement that the decree "destroys the lien" is unqualified, which means that the lien is destroyed not only as to the purchaser but as to all others unless the destroyed lien is brought back to life, which is another matter involving the policy behind the redemption statutes and the desirability of *reviving* liens which are destroyed by a foreclosure decree.[3]

Several arguments have been advanced for the revival of mortgage liens upon redemption by the mortgagor or his grantee.[4] In the face of these arguments,

---

pertains to the particular property involved by the suit, it is plain he must set it up; otherwise he must stand in default, and can get nothing."

Similarly, in Lutz v. Blackwell, 128 Or 39, 43, 273 P 705 (1929) the court said: "One who contends that he is possessed of a lien upon the property of another, and who is made a party defendant in a suit in which his lien is attacked, must set up his lien, otherwise he will be in default and can get nothing."

See also, Bickel v. Wessinger, 58 Or 98, 104, 113 P 34 (1911), where the court said: "By the foreclosure suit Weinhard's mortgage lien [the second mortgage] upon the property in question was extinguished on his default."

[3] The fact that some of our cases speak of the "title" remaining in the mortgagor until execution and delivery of the sheriff's deed does not militate against the conclusion that the decree cuts off junior liens. Statements that the mortgagor retains "title" is a way of saying that he has a right of redemption. The redemption statutes (ORS 23.600) provide that upon redemption the mortgagor is "restored to his estate." It would seem unnecessary to so provide if "title" remains in the mortgagor during the redemption period.

[4] See Durfee and Doddridge, Redemption from Foreclosure Sale—The Uniform Mortgage Act, 23 Mich L Rev 825, 850-53 (1925), stating the argument in favor of revival but then going on to show that revival is inconsistent with the purpose of redemption statutes.

the *Ulrich* case decided at least that a first mortgage lien is not revived. To reach a contrary result in the case of a second mortgage, it would be necessary to explain why a second mortgage lien revives when it is clear that a first mortgage lien does not. It would seem that the first mortgagee would have a stronger argument for the revival of his lien to satisfy the deficiency on the debt owing to him than would the second mortgagee who bargained only for a lien interest subordinate to the first mortgage. To allow revival of the second mortgage in this situation would be tantamount to holding it superior to the first mortgage to the extent of the deficiency.

It is argued that the grantee of the mortgagor can get no more than the mortgagor had and thus must take the land burdened by the mortgage.[9] Accepting the argument that the grantee can get only that which the mortgagor had, the grantee would take free of the first mortgage as held in the *Ulrich* case. That being so, it is difficult to see why he should not also take free of the second mortgage.

The reasons for not permitting the revival of liens subjected to foreclosure is summarized in a note by William F. Bernard in 27 Or L Rev 139 at 141-42 (1948):

> "The advocates for the view that the proceeding of foreclosure and sale extinguishes the mortgage lien have advanced the following arguments. It has been noted that the purpose of the redemption statutes of helping the mortgagor is thwarted rather than promoted where, under the revival theory, the possibility of successive resales is imminent. Also, it has been contended that the main purpose of

---

[9] See Flanders v. Aumack, 32 Or 19, 25, 51 P 447, 67 Am St Rep 504 (1897), and Durfee and Doddridge, *supra* note 3 at 856, n. 81.

making it to the mortgagee's interest to bid up to the fair value of the property is defeated where revival of the mortgage lien is recognized. Considering the position of the mortgagee further, the point has been emphasized that holding the lien extinguished by foreclosure and sale does not unduly burden the mortgagee because he has ample opportunity to protect himself by bidding up to the fair value of the property. In addition, we have been reminded that, notwithstanding the extinguishment of the mortgage lien, redeemed property in the hands of the mortgagor would be subject to a judgment lien for any personal deficiency judgment rendered in favor of the mortgagee. And one final argument should be noted. In those jurisdictions where the revival theory is expounded, the redemption statute usually states that upon redemption the sale is 'annulled' or 'vacated,' and such language is heavily relied upon in explaining the result reached. It has been contended that the presence of these terms does not compel the conclusion that the lien is revived upon redemption. A fortiori it may be argued that, where no language of 'annulment' is found in the statute, the view that the mortgage lien is extinguished upon foreclosure and sale is supportable."

The reasons for not permitting the revival of mortgage liens upon redemption are more specifically developed by Durfee and Doddridge, Redemption From Foreclosure Sale—The Uniform Mortgage Act, 23 Mich L Rev 825 (1925). There, the authors observe that the rejection of the rule of revival is not unfair to lienors "for they cannot reasonably have expected * * * any more than the proceeds of a single sale of the property." It is further pointed out that "the restoration of liens is a trap for the unwary" because "the redemptioner commonly, and we think not unreasonably, makes his redemption in the belief that

the statute has conferred upon him the privilege of buying out the purchaser, not a mere privilege of paying money for the advancement of others."[6]

■ In addition to their statutory right of redemption from the foreclosure sale, junior lienors have the opportunity to bid in at the foreclosure sale and "if the property is worth more than the amount of the senior lien, it is desirable to put some pressure upon the junior lienors to bid the property beyond the amount of the senior lien."[7] As was pointed out in *Willis v. Miller,* 23 Or 352, 362, 31 P 827 (1893):

> "The foreclosure and sale is intended to cut off all subsequent incumbrancers that are made parties, so that to protect themselves they must bid on the property or suffer the consequences of the extinguishment of their liens, as the object of the sale is to dispose of the property to the highest bidder; and this consequence to the later incumbrancer is calculated to promote a healthy competition and make the property bring its full value."

Similarly, the court in *Higgs v. McDuffie,* 81 Or 256, 272-73, 157 P 794, 158 P 953, 955 (1916), had occasion to give careful scrutiny to the nature of the foreclosure decree. In explaining the effect of the decree, the court said:

> "* * * [T]he true doctrine is that upon foreclosure the court seizes upon the title affected by the mortgage, divests it of that lien, and also of all subsequent claims, as well as the equity of redemption named in the statute, and offers the pledged estate, thus shorn of incumbrances, for sale for the purpose of creating a fund to satisfy the various demands against it. The *decree* puts a quietus upon the equity of redemption and *all subsequent liens.* Claimants, including the erstwhile holder of the

---

[6] Durfee and Doddridge, *supra* note 3 at 852.
[7] Durfee and Doddridge, *supra* note 3 at 852-53.

equity of redemption, must then and afterwards look to the fund and not to the land for satisfaction." (Emphasis added.)⑧

Durfee and Doddridge, supra, conclude that it is "better to hold all liens extinguished than to hold all, or any, revived. The pressure applied to junior lienors is desirable and the hardship on them is by no means shocking." They add, "We cannot make of the land a miraculous pitcher, and the attempt to do so will merely discourage redemption, encourage underbidding and defeat the purpose of the statute."⑨

However, even if it is conceded that redemption by the *mortgagor* will revive pre-existing junior mort-

---

⑧ The dissent places considerable reliance on DeRoberts v. Stiles, 24 Wash 611, 64 P 795 (1901) for the proposition that the decree of foreclosure and sheriff's sale do not divest the mortgagor of his interest in the land, that there is no divestiture until a sheriff's deed issues. For our purposes it is sufficient to point out that later Washington cases have often used language contradictory to that found in *DeRoberts*. For example, in McManus v. Morgan, 38 Wash 528, 80 P 786 (1905) the same court said:

"When appellant purchased the real property upon mortgage sale, he became entitled to the possession thereof. * * * He thereby acquired all the title to the mortgaged property which the mortgagors had. This title could be defeated only by redemption, or another sale; but, until resale or redemption, the purchaser was for all purposes the owner." 38 Wash at 532.

The statement from McManus v. Morgan, *supra,* is quoted with approval in Sandberg v. Murphy, 134 Wash 685, 688, 236 P 106 (1925).

It has further been suggested that the type of expression used in DeRoberts v. Stiles, *supra,* is against both the weight of Washington authority and common sense. See Schweppe, Interest Acquired by Purchaser at Foreclosure or Execution Sale, 5 Wash L Rev 105, 121, 125 (1930). With respect to the latter point, Dean Schweppe says, "It is suggested * * * that to hold that no title to real property passes at the sale is contrary to all commonly accepted notions of the legal effect of a sale." Schweppe, *supra,* at 121.

⑨ Durfee and Doddridge, *supra* note 3 at 852-53.

gage liens, it does not follow that redemption by the mortgagor's *grantee* will also revive such liens. As explained in 2 Glenn, Mortgages, § 234, pp. 1110-1111 (1943): "There is * * * a vital difference between mortgagor and grantee, as to statutory redemption in its effect upon junior liens." Even assuming that a junior lien would revive where the mortgagor redeems, Glenn says:

> "* * * But when the grantee redeems, there is no revival of junior liens, except those that he himself had created after he acquired title. The liens which the mortgagor created prior to his deed do not revive when the grantee redeems, for the reason that they are not his debts, and he cannot be considered as standing in the mortgagor's shoes merely because he has exercised the statutory right of redemption."

The correct analysis of the problem is found in *Moody v. Funk,* 82 Iowa 1, 4, 47 NW 1008, 1009 (1891). In that case the court said:

> "* * * [T]here is a marked difference between the case of a redemption by the judgment debtor [who was a mortgagor] and that of a redemption by his grantee. It is the policy of the law to secure to the debtor, as nearly as is practicable, the full value of his property sold on execution. If the execution creditor fail to bid for the land sold a just amount, the debtor should be permitted to transfer his interest to another for a fair consideration; and, if his grantee redeem, the execution creditor has no right to complain, for he might have bid for the land a larger sum. Nor is a junior lienholder prejudiced by such a transfer. It does not affect his right to redeem within the time given him by law, and, if he is not willing to give more for the land than the amount for which it was sold, he should not prevent the debtor from realizing what he can for his property. Where the

debtor redeems, and thus restores to his estate land subject to execution for other debts, there is more ground for holding that it may again be sold to satisfy the remainder of the unpaid judgment. But, however that may be, we are of the opinion that the grantee of the execution debtor, who, as in this case, acquires the interest of his grantor after the right of a junior lienholder to redeem is barred by lapse of time, may redeem without removing such bar, and thus perfect in himself the title to the land sold."

This same rationale for a distinction between redemption by the mortgagor and redemption by the grantee of the mortgagor was further elaborated in *Cooper v. Maurer,* 122 Iowa 321, 326, 98 NW 124, 126 (1904), where the court said:

"* * * If the property is more than sufficient to pay the mortgage debt, the junior lienholder has it in his power to protect himself either by bidding at the sale or by exercising his right of redemption. If he is unwilling to do this, he has no right to complain if some other person, believing there is a margin of profit in the property, takes a conveyance of the remaining equity or right of the debtor, and by redeeming from the sale gets a title purged of the lien of which the creditor has refused to avail himself in the time or manner prescribed by law."

Plaintiffs rely upon *Flanders v. Aumack,* 32 Or 19, 51 P 447, 67 Am St Rep 504 (1897). That case did not involve the rights arising out of a mortgage transaction. The sole question was whether a judgment lien was extingiushed when the grantee of the judgment debtor redeemed the land from the execution sale. The court was careful to point out the distinction between a mortgage lien and a judgment lien with respect

to the effect of redemption by the grantee of the debtor. The court said:

"* * * A mortgage is a specific lien, which attaches by virtue of the contract of the parties concerned; but the lien of a judgment is general, and attaches by operation of law, as a sequence of its rendition. Foreclosure is a remedy by which the property covered by the mortgage may be subjected to sale for the payment of the demand for which the mortgage stands as security, and, when the decree is had and the property sold to satisfy it, the mortgagee has obtained all he contracted for; but, if there is also a personal decree against the mortgage debtor, this becomes, from the date of its docketing, a general lien upon his real property, as in case of a judgment; and, if a deficiency remains after the application of the proceeds of the sale of the lands covered by the mortgage, the decree may be enforced by execution, as in ordinary cases: Hill's Ann. Laws, § 417, subd. 2. The resale does not take place under the order for the sale of the specific property covered by the mortgage lien, for that has been exhausted, but under the personal decree which remains as a deficiency decree against the mortgage debtor after the application of the proceeds arising under the order of sale; and a redemption will not reinstate the specific mortgage lien, while it will the general lien acquired by the personal decree. This distinction is clear, and is bottomed both upon principle and authority. The redemption is from the sale, and not from the mortgage; and if the lien of the personal decree has never attached, by reason of the mortgagor not having the fee of the property at the time it was rendered, there never existed any lien to be reinstated against his successor in interest, who purchased prior to the decree."

■ In the present case we are concerned with two specific mortgage liens, both of which were cut off by

the foreclosure decree. There was no general lien created by a docketed judgment prior to the transfer of the mortgagors' interest to their grantee. When there is an execution sale to satisfy a judgment, there is no judicial declaration, as there is in the case of a foreclosure decree, cutting off the lien. The general judgment lien, not being terminated by a decree or by the sale, continues to encumber the property during the redemption period and a grantee of the debtor takes subject to the encumbrance. However, as we have already noted, the specific lien of the mortgage is terminated by the foreclosure decree and therefore the mortgagor's grantee takes free of the foreclosed mortgage lien.[10]

It is contended that our decision today overrules *Flanders v. Aumack, supra,* as well as the later decisions in *Kaston v. Storey,* 47 Or 150, 80 P 217 (1905) and *Jacobson v. Lassas,* 49 Or 470, 90 P 904 (1907). We do not consider our opinion to have this effect.

As pointed out previously, the *Flanders* case held only that a *judgment* lien was revived upon redemption; it was not concerned with *mortgage* liens. In so limiting its opinion, the court maintained a position consistent with *Willis v. Miller,* 23 Or 352, 31 P 827 (1893), which held that a *mortgage* lien is not revived by redemption as to a deficiency. This is not the only time that the court has attempted to avoid the mistake

---

[10] Moody v. Funk, 82 Iowa 1, 47 NW 1008 (1891), which holds that the grantee of the mortgagor may redeem free from the lien of a second mortgage, is referred to in the *Flanders* case as if it involved the general lien of a judgment rather than the specific lien of a mortgage. If the court's reference to Moody v. Funk is to be taken as a disapproval of the holding in that case, the expression of disapproval would be a dictum since *Moody* dealt with a specific rather than a general lien. If *Flanders* is to be so construed, we repudiate the dictum.

of equating mortgage liens with judgment liens. Thus, in *Higgs v. McDuffie*, 81 Or 256, 272, 157 P 794, 158 P 953 (1916), the court said:

"* * * This leaves out of the calculation the effect given to the decree by the statute [in the mortgage situation], namely, barring the equity of redemption, while a judgment at law does not bar the title but only operates as a lien upon it. In equity the previous title is extinguished by the decree, while at law [that is, in the case of a judgment lien] the title does not pass until delivery of the sheriff's deed."

It is further contended that the decision in *Flanders* is inimical to the distinction between redemption by the mortgagor and redemption by the grantee of the mortgagor. Sole reliance is placed upon the language of the court that "upon principle, it is difficult to see wherein the rights of a successor in interest redeeming are to be distinguished from those of the judgment debtor himself." 32 Or at 25. This is certainly true where, as in *Flanders,* the judgment lien for the deficiency has attached prior to the conveyance by the judgment debtor. But this is not applicable to a case, such as the one before us, where the decree cutting off the mortgage lien intervenes between the conveyance by the mortgagor and the redemption by the grantee. Thus, at the time the judgment lien for the deficiency would have attached, the mortgagor no longer held the property. Under these circumstances, we do not find the same reasons for holding that the grantee takes the land subject to the debt of his predecessor.

■ Turning now to *Kaston v. Storey, supra,* we may note once again that to hold that a *judgment* lien is revived for purposes of a deficiency does not necessi-

tate or even indicate a similar holding with respect to a *mortgage* lien. The crux of the distinction between *Kaston* and the present case, however, is that in the former case the judgment creditor *was not joined as a party defendant* in the proceeding to foreclose the prior lien. Here the junior encumbrancer was joined in the suit to foreclose the first mortgage, and having failed to appear, stands in a different position from one who was never given notice and, consequently, never given an opportunity to appear.[®]

A similar distinction explains the decision of this court in *Jacobson v. Lassas, supra,* where the second mortgage had been declared invalid prior to the institution of the suit to foreclose the senior mortgage. Thus, although the junior mortgagee was made a party to the first mortgagee's foreclosure action, the previous determination of invalidity was regarded by the court as preventing him from appearing in the later action. It is because the junior mortgagee had no *opportunity* to appear, not because he failed to *actually* appear, that the court treated the case the same as if there was a failure to join a subsequent lienholder. But where, as in the present case, the junior encumbrancer has been given an opportunity to appear, he has been given everything to which the law entitles him. This same concept underlies the whole concept of default judgments; that a party is entitled only to an *opportunity* to appear and assert his claim.

■ In conclusion, then, where a junior encumbrancer is joined in an action by a senior mortgagor to foreclose the latter's mortgage, the junior encum-

---

[®] It is the universal rule that the interest of an unjoined junior encumbrancer is not affected by the foreclosure decree. See Osborne, Mortgages, § 322 (1951); 2 Glenn, Mortgages, § 86 (1943).

brancer is required to assert his interest in that action. If he fails to do so, neither redemption by the mortgagor nor by the mortgagor's grantee can revive the mortgage lien.

However, even if it be considered proper to hold the junior encumbrancer's interest revived in the case of redemption by the mortgagor, his security should be held extinguished as to a redeeming grantee. Only in one of these two ways can the legislative protection afforded the mortgagor by redemption statutes be effectuated.

Judgment affirmed.

REDDING, J. (Pro Tempore), dissenting.

The problem before the court in this case was the subject of an Annotation in 5 ALR 145 entitled "Effect on Subordinate Lien of Redemption by Owner or his Grantee from Sale under Prior Lien." There are, as the annotation reveals, two lines of cases bearing on the question. Did I not believe this court to have committed itself for more than one-half of a century to that line of cases holding contrary to the opinion of the majority, I would not feel compelled to here voice my dissent.

The property in the present case was encumbered by two duly recorded mortgages. The first mortgagee brought suit to foreclose, joining the mortgagor and the junior mortgagee as defendants. The junior mortgagee defaulted and a decree was entered providing "that the defendants * * * and all persons claiming by, through or under them * * * be forever barred and foreclosed of all right, title, interest, lien or equity in or to said real property * * * except their statutory right of redemption * * *."

Pursuant to the decree foreclosing the first mortgage, a sheriff's sale was held and the sale was subsequently confirmed to the first mortgagee. The mortgagor through mesne conveyances conveyed his statutory right of redemption to the present defendants who duly redeemed the property. No sheriff's deed was ever delivered to any party.

The second mortgagees then brought suit to foreclose their mortgage which relief was denied on the basis that the decree entered in the foreclosure of the prior mortgage was a bar to the second mortgagee's lien.

A proper understanding of this case requires that certain facts be kept in mind throughout.

1. The complaint in the foreclosure suit of the first mortgage alleged that plaintiff herein had or claimed some interest in the property inferior to that of the first mortgagee.
2. The present plaintiff did not appear in the suit foreclosing the first mortgage, but defaulted.
3. The decree of the court in the suit foreclosing the first mortgage did not provide that any part of the proceeds of sale be applied for the benefit of plaintiff herein, a junior mortgagee, after payment of the first mortgage.
4. During the period for redemption, the present defendant, by mesne conveyances, acquired the subject property and redeemed from the sheriff's sale before a sheriff's deed issued.

If, as the majority holds, the default and *decree,* per se, extinguished all junior liens of parties joined, then unquestionably the plaintiff herein cannot prevail. It is submitted that the lien of a second mortgagee is not extinguished by the default and decree of fore-

closure of a first mortgagee, in which proceeding a second mortgagee is joined and defaults, unless:

1. The decree entered purports to cut off the interest of the junior lienor and a sale is consummated by delivery of a sheriff's deed, or

2. The decree entered accords the defaulting junior mortgagee the benefits of foreclosure by providing for satisfaction of his lien from the benefits of the sale.

See *Hack v. Snow*, 338 Ill 28, 169 NE 819 (1929); *Kaston v. Storey*, 47 Or 150, 80 P 217, 114 Am St Rep 912 (1905), distinguishing *Williams v. Wilson*, 42 Or 299, 70 P 1031 (1902); *Lutz v. Blackwell et ux*, 128 Or 39, 273 P 705 (1929).

What then, is the effect of a decree upon the rights of a second mortgagee who is joined in the foreclosure of a prior mortgage, and defaults when the foreclosure does not proceed to transfer of title by sheriff's deed? Is he by said decree forever estopped to assert his lien? On facts similar to those here under scrutiny, the 6th Circuit examined this question in *Barnes v. Cady*, 232 F 318 (6th Cir 1916):

One Barnes was the owner of property subject to a first and second mortgage. The first mortgagee brought suit to foreclose, joining as defendants both the mortgagor and the second mortgagee who defaulted.

Barnes, the mortgagor, answered but raised no issue regarding the second mortgage. The only allegation of plaintiff's complaint regarding the second mortgage was as follows:

"* * * that they [second mortgagees] 'have or claim some lien or interest in said premises, and plaintiff asks that they be compelled to set

the same up or be forever cut off from asserting the same.' * * *" *Barnes v. Cady,* 232 F at 322.

The decree was entered foreclosing the first mortgage and declaring that the second mortgage was not a lien on the premises. A sale was ordered to be made on December 19, 1911. After the decree, but the day prior to the sale, the mortgagor sold his interest to his brother after the latter had obtained advice of counsel that the decree had cut off the lien of the second mortgage. The grantee then paid the first mortgage and obtained a release thereof and procured that the foreclosure proceedings be dismissed. The second mortgagee then brought suit to foreclose his mortgage. The mortgagor's grantee alleged that the prior decree was a bar to the second mortgagee's claim, or in the alternative that he was subrogated to the first mortgage.

The reviewing court was in accord with the conclusion of the trial court that the decree did not preclude the second mortgagee from maintaining his suit to foreclose. The law of estoppel by judgment or res judicata was reviewed, the court recognizing that where a second cause of action or suit is brought between parties to prior litigation on the same claim or demand, the judgment is a bar to *all matters which were or could have been raised.* But where a second cause is prosecuted between the same parties, but upon a different claim or demand, the judgment or decree bars relitigation *only of matters actually litigated in the prior suit.*

In the foreclosure of the first mortgage, the existence or validity of the second mortgage was not put in issue by the complaint and therefore, a decree purporting to decide those issues was void as against a

party who defaulted. Quoting again from *Barnes v. Cady*, supra, at pps. 321, 322:

"* * * In the language of the Supreme Court in Barnes v. Chicago, Milwaukee & St. Paul Railway Company, 122 U. S. 1, 7 Sup. Ct. 1043, 30 L. Ed. 1128:

" 'Every decree in a suit in equity must be considered in connection with the pleadings, and, if its language is broader than is required, it will be limited by construction so that its effect shall be such, and such only, as is needed for the purposes of the case that has been made and the issues that have been decided.'

"* * * * *

"We think it apparent that the only issue there decided, or necessarily involved, between the first and second mortgagees was the priority of their respective mortgages, and that the only adjudication intended, and therefore effected, by the court as between said mortgagees was its decree that the first mortgage was a good and valid lien and that in default of the required payment thereof said land should be sold to satisfy such mortgage free from any claims of the junior mortgagee. We think that the following language, used in the case of Lincoln National Bank v. Virgin, 36 Neb. 735, 55 N.W. 218, 38 Am. St. Rep. 747, is applicable here:

" 'There is no doubt of the jurisdiction of a court of equity upon proper pleadings in a foreclosure proceeding, to determine the rights of all parties thereto with respect to the subject of the controversy, whether plaintiffs or defendants. But the power to conclude parties not claiming adversely to the plaintiff, whether subseqeunt mortgagees, or mortgagor and mortgagee, so as to prevent them from afterwards asserting their rights as against each other, depends upon whether such power has been invoked by one or more of the parties thus interested. *In the judgment pleaded as a bar in this case, the only relief sought was the foreclosure of the Neir mortgage. In his position*

> *the plaintiff therein alleged, in effect, that his mortgage was the prior lien. That was a proposition which the * * * [second mortgagee] could not controvert. It is true it might have answered (assuming that it was still the owner of the mortgage) and by cross-bill secured an accounting and decree against the mortgagors, and an order for payment from the proceeds of the mortgaged property after the satisfaction of the prior lien. * * * The * * * [second mortgagee], by its default, must be held to have confessed the cause of action of the plaintiff therein, and to that extent the decree is conclusive. But the question of the validity of the mortgage now under consideration, as a second lien, was not presented by the petition, and the bank, as a defendant in that action, was justified in assuming that Neir, the plaintiff, was merely seeking to assert his own lien.'* "* (Emphasis supplied.)

The court held that as to priority between the mortgagees, an issue raised by the complaint in the foreclosure of the first lien, the decree was conclusive. That issue was tacitly conceded by the default. That proceeding did not determine issues between codefendants who did not stand with reference to each other as actual adversaries. For that proposition the court quoted from *Moehlenpah v. Mayhew,* 138 Wis 561, 119 N.W. 826:

> " 'In a subequent litigation between themselves, parties who were codefendants in a former action are not concluded by the judgment in such former action, unless there was an issue framed between such codefendants covering the point in question, or unless the plaintiff in the former action made a claim against each defendant which negatived in effect the right thereafter claimed by the other against his codefendant.' " 232 F at 323.

The court went on to say:

"As we have pointed out, no issue was framed between the codefendants in question, and we think that the decree of foreclosure did not, and was not intended to, determine any controversy between them. If, however, it was intended by such decree to determine as between the two defendants the validity or existence of the junior mortgagee, the decree was, to that extent, beyond the jurisdiction of the court, and void * * *." Ibid.

And from 23 Cyc. 1318, the court quoted:

" 'Since a judgment is not valid which is rendered without jurisdiction of the question or issue decided, and since a void judgment creates no estoppel, it follows that if the court assumes to pass judgment upon a point or question not submitted to its decision by the parties in their pleadings, nor drawn into controversy by the course of the evidence, the judgment to that extent is not conclusive in a subsequent proceeding.' " Ibid.

In conclusion, the court held that the trial court was correct in permitting the second mortgagee to prosecute his foreclosure, but reversed the case on the ground that the mortgagor's grantee had been erroneously denied subrogation to the priority of the first mortgage lien which he had paid and satisfied.[1] See also *Lowe v. Harmon,* 167 Or 128, 115 P2d 297 (1941); *Glenn v. Savage,* 14 Or 567, 13 P 442 (1887);

---

[1] It is believed that a distinction is properly drawn between cases in which a mortgagor's grantee *pays and satisfies a prior mortgage* and a case where such grantee exercises a statutory right of redemption and *redeems* property from a foreclosure sale. In the case of payment, subrogation would be proper; in the case of redemption, it would not. This is believed to be the case, since redemption occurs after the lien foreclosed upon has been extinguished by merger in the decree. Redemption would not revive the lien of the first mortgage.

and *Walin et al v. Young*, 181 Or 185, 180 P2d 535 (1947).

In *Kaston v. Storey*, 47 Or 150, 80 P 217, 114 Am St Rep 912 (1905), this court recognized the principle that upon sale of real property pursuant to a decree of foreclosure, title does not pass to the purchaser until execution and delivery of a sheriff's deed. Until then, legal title remains in the mortgagor "subject to be defeated only by the consummation of such sale by the execution and delivery of a sheriff's deed * * *." 47 Or 153. Where the sale is not consummated but instead the property is redeemed from the sale by the mortgagor or his grantee, the effect of redemption is controlling in determining the rights of junior lienors. This question was before the court in *Kaston*, supra, where the redemptioner was a grantee of a judgment debtor. The court said:

"The redemption by the plaintiff as the successor in interest of the judgment debtor, however, put an end to any further proceedings to enforce the decree, defeated the inchoate right or title of the purchaser, and restored the property to the same condition as if no sale had been attempted: *B. & C. Comp.* §§ 250, 427; *Cartwright v. Savage,* 5 Or. 397; *Settlemire v. Newsome,* 10 Or. 446; *Flanders v. Aumack,* 32 Or 19 (51 Pac. 447, 67 Am. St. Rep. 504). The redemption obliterated every effect and consequence of the foreclosure sale, and the parties to this suit now stand in precisely the same position, so far as the right of the defendants to proceed on the judgment at law is concerned, as if there had been no proceedings to enforce the decree, and Lundin [the mortgagor] had, subsequent to the recovery and docketing of the judgment at law, conveyed the property to the plaintiff. In such a case the property would unquestionably be subject to the lien of the judgment and liable to a sale on the execution thereunder.

"* * * When * * * an inchoate sale under the decree is arrested and the effect thereof terminated by the judgment debtor or his successor in interest redeeming, the judgment lien creditor is not deprived of his right to proceed on his judgment as against the debtor or his grantee: *Curtis v. Millard,* 14 Iowa, 128 (81 Am. Dec. 460). The observation of Mr. Jones, quoted in *Williams v. Wilson,* 42 Or 299 (95 Am. St. Rep. 745, 70 Pac. 1031), that a creditor having judgment rendered before the sale but subsequent to the decree is as effectually barred by the sale as if he had been made a party to the proceedings (2 Jones, Mortgages, 6 ed., § 1437), manifestly has reference to a completed and not an inchoate sale. *There is no sale, in the legal sense, under a judgment or decree until the title passes.* Until that time the purchaser has a mere inchoate and defeasible right to a conveyance of the legal title. When the judgment debtor or his successor in interest redeems, the process of transfer of title to the purchaser is arrested, his equitable interest terminated, and is as if it had never existed: *Settlemire v. Newsome,* 10 Or. 446. We are of the opinion, therefore, that the defendant Paxton is not barred from proceeding under his judgment at law by the decree in the foreclosure suit or the subsequent proceedings had thereunder." (Emphasis supplied.) *Kaston v. Storey,* 47 Or at 155.

The plaintiff in *Kaston v. Storey,* supra, contended that the judgment was barred by the decree of foreclosure and cited *Williams v. Wilson,* 42 Or 299, supra, in support of its contention. The court distinguished the *Williams* case as follows:

"* * * That case is essentially different from this. It was a suit to foreclose a mortgage. A judgment against the mortgagor had been recovered and docketed subsequent to the execution of the mortgage and prior to the commencement of the fore-

closure suit. The judgment lien creditor was made a party to the suit. He appeared and set up his judgment by answer or cross-complaint, and secured a decree that the proceeds of the sale of the mortgaged property, after satisfying prior liens, should be applied in payment of his judgment. The court held that the rights of such a judgment lien creditor as against the particular property were merged in and must be worked out through the decree, and consequently he could not have the premises resold under an execution issued on his judgment at law for a deficiency due him thereon, when the property had been redeemed from the foreclosure sale by a grantee of the mortgagor, who took subsequent to the rendition of the decree * * *." *Kaston v. Storey,* 47 Or at 153, 154.

The court explained in *Kaston v. Storey,* supra, the judgment lien was not merged in the decree because the lienors "did not and could not have appeared in the foreclosure suit and set up their claim * * * and their lien was not merged in the decree, and could not be worked out through it * * *."

The same result was reached by the court of Illinois in *Hack v. Snow,* 338 Ill 28, supra, where the junior lienor was joined and appeared, but the only issue determined as to him was his priority.

There the following contention was made:

"* * * the sale of land under a decree of foreclosure is a sale of every interest in the land belonging to any party to the suit and discharges the land from every lien of such party, and she cites authorities to that effect. *This, of course, is true where the decree orders the payment of all the liens and a sale is ordered for all such liens, the sale made, a certificate of purchase issued, no redemption made and deed issued. In that case,*

*no redemption having been made, all the title which the mortgagor had at the time of the making of the mortgage, and all liens subsequent to the making of the mortgage, are wiped out and the purchaser takes the fee in the property unencumbered of such liens. In the instant case the decree did not order Liesik's judgment paid nor order the sale of the property for the payment thereof.* The property was redeemed, and by virtue of the statute the mortgage, its foreclosure, the sale and the certificate of purchase became null and void and the property freed from the lien thereof but subject to Liesik's judgment lien. Liesik having a valid judgment lien upon the property was entitled to have the property sold in satisfaction thereof." (Emphasis supplied.) 338 Ill at 31, 32.

In the case at bar, while Calls' interest would have been extinguished because of their joinder as a party had a sheriff's deed issued—where, as here, there was a redemption by the mortgagor's grantee before title could pass by delivery of the sheriff's deed, and the decree did not in terms provide for the payment of the second mortgagee's interest—such interest is not barred by the decree.

Further support for the proposition that the decree of foreclosure per se does not extinguish the lien of of a junior mortgage is found in the case of *Jacobson v. Lassas,* 49 Or 470, 90 P 904 (1907).

The authorities quoted by the majority appear to lend support to its conclusion that the grantee of a judgment debtor or mortgagor who redeems from a foreclosure sale stands in a different position with respect to junior lienors than would his grantor had he redeemed.

*Moody v. Funk,* 82 Iowa 1, 4, 47 NW 1008 (1891) cited in the majority opinion, declares that "there is

a marked difference between the case of a redemption by the judgment debtor and that of a redemption by his grantee." The expression in *Moody v. Funk,* supra, relied upon by the majority is contrary to the generally recognized legal concept that a grantee takes only his grantor's rights and receives title burdened by all defects existing in that title in the hands of his grantor, unless, of course, the grantee was a bona fide purchaser for value without notice of such defect. *Hack v. Snow,* supra; *Kaston v. Storey,* supra; *Jacobson v. Lassas,* supra; *Flanders v. Aumack,* 32 Or 19, 51 P 447, 67 Am St Rep 504 (1897). Furthermore, the holding in *Moody v. Funk,* supra, relied on by the majority, was carefully considered by and expressly repudiated by this court in *Flanders v. Aumack,* supra. In repudiating the holding in *Moody v. Funk,* supra, and several other Iowa cases which hold that there is a difference between the case of a redemption by the judgment debtor and that of a redemption by his grantee, Justice WOLVERTON speaking for this court, said:

"Upon principle, it is difficult to see wherein the rights of a successor in interest redeeming are to be distinguished from those of the judgment debtor himself. The statute gives the right of redemption to the judgment debtor or successor in interest, but declares that, when the judgment debtor shall redeem, the effect of the sale shall terminate, and he shall be restored to his estate. A conveyance by the debtor can confer no greater rights than he himself had. It cannot disencumber the property, nor give a better or superior title. The successor is not a *bona fide* purchaser for value, but simply occupies the shoes of his predecessor, with no new or enlarged rights or privileges, and can neither exercise nor enjoy any that the judgment debtor did not possess or could not have

enjoyed. The effect of a sale under execution is to suspend, but not to devest, the lien of the judgment, as it suspends all subsequent liens until redemption is made, but a sheriff's deed cuts them off altogether. During the interim between the sale and the deed, the rights of the parties interested are measured by the statute. The sale is inchoate, and does not transfer title until consummated by the execution and delivery of the deed in due course of law. * * * But a redemption by the judgment debtor * * * terminates the sale, and restores the estate. The sheriff's duties are at an end, and he can proceed no further. And such is the effect of a redemption by his successor in interest * * *." *Flanders v. Aumack,* 32 Or at 25, 26.

The Supreme Court of our sister state of Washington, in *De Roberts v. Stiles,* 24 Wash 611, 64 P 795 (1901), reached a conclusion contrary to that of the majority on facts which cannot be distinguished from those of the present case, citing and quoting extensively from the decision of this court in *Flanders v. Aumack,* supra.

In that case Stiles purchased certain land subject to a mortgage which he assumed and agreed to pay. As part of the purchase price, he gave his grantor a note secured by a second mortgage on the land. Stiles defaulted and the first mortgagee brought suit to foreclose, joining as defendant the second mortgagee. Pursuant to this proceeding a decree was entered wherein it was decreed "that plaintiff should recover judgment for $2,096.64, and for attorney's fees and costs, and that said real estate should be sold for the satisfaction of said judgment * * *." Subsequently, the property was sold by the sheriff to the first mortgagee for the amount of the decree and a certificate of sale issued. Prior to delivery of a sheriff's

deed and during the statutory period of redemption, Stiles conveyed his interest to one Fry, who took with notice of the junior lien. The grantee of the mortgagor, Fry, redeemed.

The second mortgagee then brought suit against Stiles on the note, joining Fry as defendant and alleging against him that the property redeemed by him was subject to the second mortgage.

The trial court found for the plaintiff, junior mortgagee on the note, but dismissed the case against Fry as to the lien on the land. In reversing the dismissal as to Fry, the court stated:

> "The judgment of the court below, we apprehend, was based upon the theory that the then holder of the mortgage now in suit was made a party defendant to the former foreclosure proceedings on the $1,600 mortgage, and that, as he did not set up any claim in that action under his mortgage, and did not redeem from the sale which was made under said foreclosure proceedings, his mortgage is now barred. If title had passed by the sheriff's sale to a purchaser, that would undoubtedly be true. In that event all rights of the second mortgagee or his assignee would have been forever barred. But that is not the case presented here. When Fry took the title to this land by the quitclaim deed from Stiles, he stood in Stiles' shoes in all particulars, so far as his relation to this land was concerned. At the time Stiles deeded to Fry, he (Stiles) had the right to redeem from the mortgage sale, and by so doing the effects of the sale would have been determined, and he would have been restored to his estate. 2 Hill's Code, § 515. This court has said in *Singly v. Warren*, 18 Wash. 434, 445 (51 Pac. 1066, 1069, 63 Am. St. Rep. 896):
>
> "'A certificate of sale executed by a sheriff does not pass title. At most, it is only evidence of

an inchoate estate, which may or may not ripen into an absolute title.'

"In any event, aside from the question of where the title rests during the redemptionary period, the section of the statute above cited provides for a complete restoration of the estate upon redemption being accomplished. The estate stands as if no sale had ever been made. Stiles, by his deed to Fry, transferred his right of redemption to Fry, and, when Fry redeemed, the estate was restored, as if no sale had been made.

" 'When the redemption is made by the defendant or his heirs, devisees, grantees, etc., the sale of the premises so redeemed and the certificates of such sale shall be null and void; the proceeding is at an end.' *Phyfe v. Riley,* 15 Wend. 248, 252 (30 Am. Dec. 55)." *De Roberts v. Stiles,* 24 Wash at 617, 618.

With reference to redemption by the grantee of the judgment debtor, the court went on to say that such redemption:

" '\* \* \* terminated the sale, and restored him to his estate exactly as it was before the sale took place, except that the judgment upon which the sale was made was satisfied. All other liens, prior and subsequent, remained unimpaired.' *Warren v. Fish,* 7 Minn. 432, 440.

" 'Upon principle it is difficult to see wherein the rights of a successor in interest redeeming are to be distinguished from those of the judgment debtor himself. The statute gives the right of redemption to the judgment debtor or successor in interest, but declares that when the judgment debtor shall redeem, the effect of the same shall terminate, and he shall be restored to his estate. A conveyance by the debtor can confer no greater rights than he himself had. It cannot disencumber the property, or give a better or superior title. The successor is not a *bona fide* purchaser for value,

but simply occupies the shoes of his predecessor with no new or enlarged rights or privileges, and can neither exercise nor enjoy any that the judgment debtor did not possess or could not have enjoyed.' *Flanders v. Aumack,* 32 Ore. 19 (51 Pac. 447, 449, 67 Am. St. Rep. 504).

"Respondents' contention that the grantee of the judgment debtor has greater rights than the judgment debtor himself cannot, therefore, prevail. The contention that the judgment in foreclosure barred appellant's mortgage must also be denied, for the reason that the redemption by the owner of the land extinguished the foreclosure proceedings. Redemption by a mortgagee or any other redemptioner than the owner of the land would have led to a different result. Such a one would have been entitled to a sheriff's deed transferring the absolute title to him, unless appellant had redeemed from such redemption under the statute. A sheriff's deed to such a one would then have made the foreclosure proceedings an absolute bar to appellant's mortgage." 24 Wash at 619, 620.

The lower court's decree was vacated and the junior mortgage foreclosed as a valid and subsisting lien.[9]

---

[9] The majority, in Footnote 8, quote the author of an article, "Interest Acquired by Purchaser at Foreclosure or Execution Sale", 5 Wash L Rev 105 (1930), as declaring De Roberts v. Stiles, 24 Wash 611, supra, to be against the weight of Washington authority and common sense. The article by Dean Alfred J. Schweppe was inspired by the decision of Atwood v. McGrath, 137 Wash 400, 242 P 648 (1926). That case declared that the Washington court had "long and consistently held that a certificate of sale executed by a sheriff does not vest title, being at most but evidence of an inchoate estate that may or may not ripen into an absolute title * * *."

The author, Dean Alfred J. Schweppe, there reviewed the Washington cases, showing the lack of uniformity and actual conflict of judicial pronouncement on the question of the title acquired by a purchaser at sheriff's sale.

Dean Schweppe states at page 121 of the article:

"It is not the object of this discussion especially to advocate any one of the views that have heretofore been enter-

In foreclosure proceedings much confusion results from reference to the lien of junior mortgagees as "being extinguished by the decree." The confusion is a consequence of the use of the term "extinguished" in several contexts. Properly understood, I believe that extinguishment of a junior mortgage lien in the foreclosure of a prior mortgage can occur in three ways.

First—where a junior lienor is joined in a suit to foreclose a prior mortgage upon the issuance of a sheriff's deed title passes to the purchaser free from the second mortgage lien, which by said deed is extinguished.

Second—where a junior lienor is joined in a suit to foreclose a prior mortgage and a decree is entered

---

tained by the court, but primarily to point out that in the light of the foregoing review, the question can hardly be deemed to be finally settled. It is suggested, however, that to hold that no title to real property passes at the sale is contrary to all commony accepted notions of the legal effect of a sale * * *.

"* * * * *

"In conclusion, it is merely observed that the preponderating weight of the Washington cases, appears to be in favor of the conclusion that real property is 'sold' at the sale and a determinable title thereto acquired by the purchaser, and against the conclusion that the certificate of purchase is merely 'a chose in action,' as held in the recent case of *Atwood vs. McGrath, supra;* and it may be hoped that the divided opinion of the department of the court in that case on this subject may ultimately be thoroughly reviewed by the court *en banc.*" 5 Wash L Rev at page 125.

It may be noted that in Bonded Adjustment Co. v. Helgerson, 188 Wash 176, 61 P2d 1267 (1936) the Washington court, en banc, did precisely that. It there unanimously adhered to *Atwood v. McGrath,* 137 Wash 400, supra, and rejected the rule the author infers to be preferable and likewise repudiates the rule which the majority appears to announce. Also see City of Seattle v. Lanza, 18 Wash 2d 167, 138 P2d 667 (1943); United States v. Bennett et al, 57 F Supp 670 (Ed Wash 1944); Swanson v. United States 156 F 2d 442 (9th Cir Wash 1946).

affording the junior lienor the benefits of foreclosure and provision for payment thereof is made in the decree, it is uniformly held that the lien of the junior mortgagee is thus extinguished. When so extinguished, junior lien claimants have no grounds for complaint, for their specific junior mortgage liens have been converted by the decree into a judgment lien. They may then, and then only, bid in at the foreclosure sale and participate in the proceeds of the sale in excess of the demands of the first mortgagee and they may also redeem.

Third—when, between actual adversaries, issues are tendered challenging the existence or validity of a junior lien, and a decree is entered holding the junior lien not to exist or to be invalid, the lien is extinguished *by the decree.* The holder of such a purported lien cannot be heard to complain, though he be deprived of the right to bid in at foreclosure sale and the right to redeem, for he has had a hearing, or at least an opportunity to be heard, on issues which directly challenged the existence or the validity of his lien.

The majority states, "Plaintiffs misconceive the purpose of foreclosure proceedings * * * *it is designed to extinguish all interests which are subordinate to the foreclosing mortgagee's interest. This result is clearly pronounced in the decree itself* * * *." (Emphasis supplied.) How, it must be asked, can a decree pronounce or determine matters not before the court for adjudication on the pleadings as framed? While our statutes make an adjudication of all issues between all parties feasible in foreclosure proceedings, such adjudication, it is submitted, is limited to those issues and those issues only tendered by the pleadings of the parties.

A first mortgagee, in seeking a foreclosure of his

mortgage, is concerned only with matters that will affect his rights under his mortgage. He has no interest in extinguishing all liens junior to the lien of his first mortgage—he desires only that junior liens be adjudged to be junior and it is for that reason and that reason only that he names as parties defendant the record holders of junior liens. Where there are junior lien claimants, a plaintiff first mortgagee has no interest whatever in the amount of such liens or in the priority as between them. He formulates his complaint in foreclosure accordingly. He has no interest as to the effects of the foreclosure proceedings on the statutory right of redemption available to the mortgagor or his grantee. This is so for the reason that the first mortgagee has no right of redemption and he is powerless to encourage or bring it about or discourage or prevent it from occurring. His complaint in foreclosure is formulated accordingly. His interest is fully served by, and he therefore ordinarily seeks only, a judgment and decree directing a sale of the property which is subject to his mortgage, and the application of the proceeds of such sale, first to the costs of sale, then to the amount due him on his judgment. Where the over-plus, if any, goes, he does not care. This is precisely the procedure followed by the first mortgagee, Pacific Mutual Life Insurance Company, in the foreclosure of its first mortgage lien on the property covered by the second mortgage of the plaintiff herein.

Where, as in the present case, the question of the existence or the validity of the second mortgage was not presented by the complaint of the first mortgagee, Pacific Mutual Life Insurance Company, the second mortgagees, Calls, plaintiffs herein, in that action were justified in assuming that Pacific Mutual Life Insur-

ance Company, the plaintiff therein, was merely asserting the priority of its own lien, the only factual issue on which they, by the pleadings, were or indeed could have been adversaries. *Barnes v. Cady*, 232 F 318, supra.

While the plaintiff first mortgagee's purposes are fully served by a mere joinder of the junior lienors, the mortgagor or his grantee may have a vital interest in seeing that the decree specifically adjudicates the existence and validity as well as the priority and amount of each junior lienor made defendant in the suit. This is so since by so doing all valid specific liens of junior lien claimants would be merged in the judgment and decree of foreclosure and the mortgagor or his grantee, upon redemption, would retake the property free from all such specific liens. In Oregon, under ORS 88.050, the mortgagor or his grantee may accomplish this by answer and cross-complaint by merely listing each junior lien claimant and asking that the proceeds of the sale of the mortgaged property, after satisfying the costs of sale and the claim of the first mortgagee, be applied to the satisfaction of each junior lien, setting forth the amount to which the holder of each is entitled and the order of priority thereof—matters concerning which frequently he and he alone has knowledge.

In litigation between a defendant second mortgagee and a defendant cross-complainant mortgagor or his grantee, the parties are in all respects and in all matters adversaries, and, for that reason, upon answer and cross-complaint of a defendant mortgagor or his grantee, all claims between the mortgagor and junior lien claimants can be litigated and determined. A default as to any and all matters put at issue between such adversaries would be binding. We thus see that

the mortgagor or his grantee, by cross-complaint, can extinguish all specific junior liens by causing such junior liens to merge in the foreclosure judgment and decree, thus enabling the mortgagor or his grantee to retake the property upon redemption free from all specific liens. By so proceeding, problems which the majority foresees, such as underbidding at foreclosure sale, multiplicity of suits, the disturbing of priorities by what the majority refers to as the revival and advancement of junior liens over the lien of a first mortgage deficiency, would be avoided. What is more important, while such a procedure would reach precisely the same result as that approved and found to be desirable by the majority, it would be accomplished without doing violence to all commonly accepted concepts of pleading.

In conclusion, it is submitted that a decree foreclosing a first mortgage does not extinguish the lien of a named second mortgagee, regardless of the recitals embodied therein, unless the decree makes provision for the second mortgagee, thus causing his lien to merge in the foreclosure judgment and decree, or, unless the existence or the validity of the second mortgage lien has been placed in issue by appropriate pleadings, by parties who are truly adversaries as to the existence or validity of such second mortgage lien. Upon redemption by a mortgagor or his grantee, an unextinguished second mortgage lien such as that of the plaintiff herein may be foreclosed.

McALLISTER, J., joins in this dissent.