**In re Timothy Owen BRAKER and Ginger Kay Braker, Debtors.**

**STATE OF OREGON, DEPARTMENT OF VETERANS' AFFAIRS, Appellant,**

v.

**Timothy Owen BRAKER and Ginger Kay Braker, Appellees.**

**BAP No. OR–90–1193–OMeR.**

**Bankruptcy No. 389–34593–H13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 13, 1990.

Decided April 11, 1991.

Daniel Rosenhouse, Portland, Or., for appellant.

Eric Olson, Salem, Or., Robert Meyers, Portland, Or., for appellees.

Before: OLLASON, MEYERS, and RUSSELL, Bankruptcy Judges.

## OPINION

OLLASON, Bankruptcy Judge:

The Department of Veterans' Affairs ("DVA") objected to a Chapter 13 plan that proposed to cure a defaulted mortgage after a foreclosure sale. The bankruptcy court confirmed the plan and the DVA appealed. We reverse.

## FACTS

The DVA held a mortgage on debtors' home and debtors defaulted. A decree of foreclosure was thereafter entered in Oregon state court on July 26, 1989, and a writ of execution followed. The property was sold pursuant to the writ on October 3, 1989. Because Oregon law does not permit lenders to recover a deficiency resulting from such a sale, the foreclosure sale extinguished the DVA's entire claim against the debtors.

Two days later, debtors petitioned for relief under Chapter 13 of the Bankruptcy Code. The bankruptcy court eventually confirmed a Chapter 13 plan which allowed the debtors to recover their home and make regular payments on their mortgage, while curing their default through and during the course of the plan.

In support of its confirmation order, the bankruptcy court found that debtors' petition was filed during the pendency of their statutory redemption rights, and, relying on *In re Ivory*, 32 B.R. 788 (Bankr.D.Or. 1983), concluded that 11 U.S.C. section 1322(b)(5) permitted the cure contemplated in debtors' plan.

## ISSUE

The sole question presented for review is whether a Chapter 13 plan may cure and reinstate a mortgage subsequent to a pre-petition foreclosure sale, but prior to the expiration of a statutory right of redemption.

## STANDARD OF REVIEW

The interpretation of the Bankruptcy Code and the relevant Oregon statute is a question of law which we review *de novo*. *See In re Wade*, 115 B.R. 222, 225 (9th Cir. BAP 1990).

## DISCUSSION

When a petition in bankruptcy is filed, the resulting estate possesses every legal and equitable right held by the debtor. 11 U.S.C. section 541. The right of redemption can be either legal or equitable.

Equitable redemption developed in the common law. Originally, one who pledged realty to secure a debt gave title to the lender, and the property could be recovered only if the debt was fully paid when due. To ameliorate the harshness of default, courts of equity allowed debtors with adequate cause to redeem a defaulted mortgage. Equitable redemption rights were at first open-ended in time, leaving title uncertain for years. To prevent abuses of equitable redemption, courts of equity fashioned a deadline for seeking such relief. That deadline was the time of "foreclosure." To this day, Oregon law recog-

nizes that the right of equitable redemption is cut off by foreclosure.

To temper the harshness of foreclosure, the Oregon legislature has provided a statutory redemption right. O.R.S. section 23.-560(1). Like equitable redemption, it allows redemption of the property notwithstanding the debtor's default. Unlike equitable redemption rights, which terminate upon foreclosure, statutory redemption rights begin upon foreclosure. The statute which creates the right of equitable redemption also stakes its frontier. That statute provides, in part:

> The mortgagor or judgment debtor whose right and title were sold, or the heir, devisee or grantee of the mortgagor or judgment debtor, who has acquired by inheritance, devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the property sold, may, at any time within 180 days after the date of sale, redeem the property; provided that a transfer of the judgment debtor's interest in the property, either before or after sale, shall preclude the judgment debtor from the right to redeem unless the proceeds from the sale are insufficient to satisfy the judgment, in which event the judgment debtor shall have the right to redeem at any time within 10 days after the 180 days herein allowed for redemption, and not otherwise.

O.R.S. § 23.560(1).

*In re Ivory,* 32 B.R. 788 (Bankr.D.Or. 1983), upon which the court below relied, held that a Chapter 13 plan can cure postsale defaults so long as the chapter 13 petition is filed within the statutory redemption period. The court said:

> Thus, it is clear that a debtor retains an interest in the property until the statutory redemption period has run and legal title has passed. Upon the filing of a petition under the Bankruptcy Code, all legal and equitable interests of the debtor in property as of the commencement of the case become property of the estate. 11 U.S.C. § 541. In the present case, the one year statutory redemption period, which began to run from the date

of the sale on September 22, 1982, had not yet expired when the debtors filed their chapter 13 petition on March 18, 1983. Thus, the debtor's right of redemption became property of the estate at the time of the debtors' filing. The fact that the debtors still retain an interest in the sold property gives them the right to effect a cure under 11 U.S.C. § 1322(b)(5).

32 B.R. at 791. The *Ivory* court expressly rejected the notion that the sale of the property affects the debtors' ability to cure under the Bankruptcy Code. 32 B.R. at 791–792. The court reasoned that state laws which limit the right to cure must yield to the supremacy of federal bankruptcy law. *Id.*

■ The DVA asserts that the default cannot be cured and the mortgage reinstated during the statutory redemption period, citing *Justice v. Valley National Bank,* 849 F.2d 1078 (8th Cir.1988) (decided with reference to Chapter 13, upon which Chapter 12 was modeled, *In re Mann Farms, Inc.,* 917 F.2d 1210, 1214 (9th Cir.1990)), *In re Roach,* 824 F.2d 1370 (3rd Cir.1987), *In re Glenn,* 760 F.2d 1428 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), and *In re Tynan,* 773 F.2d 177 (7th Cir.1985). Those circuit courts held that a foreclosure sale extinguishes the contractual relationship between the debtor and the lender. An Oregon decree of foreclosure also extinguishes the mortgage contract. *Call v. Jeremiah,* 246 Or. 568, 571, 425 P.2d 502, 505 (1967). The circuit courts concluded that the curing of a default under 11 U.S.C. section 1322(b)(5) requires an existing contractual relationship. *Justice, supra,* 849 F.2d at 1085; *Roach, supra,* 824 F.2d at 1377; *Glenn, supra,* 760 F.2d at 1442; *Tynan, supra,* 773 F.2d at 178. Section 1322(b)(5) provides that a Chapter 13 plan may:

> Notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

The circuit courts reasoned the need for a contractual relationship from the common meaning of the words "cure" and "default." To have a cure, there must be a default, and to have a default, there must be a contract. *Justice* at 1085; *Roach* at 1377. Although the Ninth Circuit Court of Appeals has not considered this question, it has determined that a promissory note which had fully matured pre-petition was not susceptible of a "cure":

> We hold ... that the "cure" provisions of subsections (b)(3) and b(5) are inapplicable when a debt has reached its maturity date in the absence of acceleration, prior to the filing of the Chapter 13 petition.

*In re Seidel*, 752 F.2d 1382, 1383 (9th Cir. 1985).

The DVA also points out that because it has no right to a deficiency, it has no claim against the debtor. The default that section 1322(b)(5) contemplates curing is "any default ... on any unsecured claim or secured claim...." Since the DVA has no claim, it argues that there can be no default, and that there is nothing to cure.

Indeed, the record reveals no claim by the DVA against the debtors. Instead, the DVA has a judgment arising from a judicial mortgage foreclosure, and debtors have a claim against the DVA based on their statutory redemption rights.

In *Roach*, the court found nothing in section 1322 to suggest a Congressional intent for the curing of a default to extinguish a creditor's judgment rights. *Roach* at 1378. Nor does the Bankruptcy Code reveal any Congressional intent to modify the claims of debtors against others. The plan confirmed by the court below purports to do both—it would convert the debtors' statutory redemption rights, and the DVA's judgment, into a mortgage.

■ Under the Oregon statute, redemption cannot revive the mortgage, it can only pay the debt. *See Call v. Jeremiah, supra*, 246 Or. at 571, 425 P.2d 502. The code neither creates nor enhances the rights a debtor brings into the bankruptcy estate. *See* 11 U.S.C. section 541(a)(1); *In re Kaplan*, 97 B.R. 572, 576 (9th Cir. BAP 1989); *In re Gull Air, Inc.*, 890 F.2d 1255, 1261 (1st Cir.1989). The debtors' plan, however, would have it do so.

### CONCLUSION

The cure contemplated by section 1322(b)(5) is a cure that provides both debtor and creditor with the equivalent of their state law rights. *Cf. Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979). The "cure" contemplated in debtors' plan, and prohibited by *Justice, Roach, Glenn, Tynan*, and *Seidel*, is not a cure at all. It would create new rights for the debtors while taking vested rights from the DVA, a result not contemplated by the code. We agree with the well-reasoned opinions of the circuit courts and disapprove of *In re Ivory*. A pre-petition foreclosure sale prevents the application of section 1322(b)(5) to cure the antecedent default.

Reversed.