**In the Matter of Herbert BREUER, a/k/a Herb Breuer, Debtor.**

**Bankruptcy No. 80 B 20061. Adv. No. 80–2017.**

United States Bankruptcy Court, S. D. New York.

April 2, 1980.

Robert B. Schindler, New York City, for debtor.

Lawrence R. Reich, P. C., White Plains, N. Y., for Provident Savings and Loan Association.

## DECISION ON COMPLAINT OF PROVIDENT SAVINGS AND LOAN ASSOCIATION FOR AN ORDER LIFTING STAY.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, Provident Savings and Loan Association (Provident) has commenced an adversary proceeding in this case filed under Chapter 13 of the Bankruptcy Reform Act of 1978 to vacate the automatic stay under Bankruptcy Code § 362. Provident seeks to proceed in the Supreme Court of the State of New York, County of Rockland, with respect to the judgment of foreclosure and sale dated January 9, 1980. Provident holds a first mortgage on the debtor's principal residence.

Both parties appeared at the preliminary hearing which this court consolidated the same day with the final hearing in accordance with Code § 362(e).

### FINDINGS OF FACT

1. On February 13, 1980, the debtor filed with this court his voluntary petition under Chapter 13 of the Bankruptcy Code for an Adjustment of Debts of an Individual with Regular Income.

2. The debtor is a professional photographer who maintains a studio and equipment in his residence located in Valley Cottage, New York. In order to supplement his income he has recently obtained a night job as a machinist, for which he is also qualified. The debtor is the sole shareholder of a corporation which owns a photography library that is mortgaged to the Small Business Administration under a $50,000 loan, and for which the debtor is liable as a guarantor. He gave a third mortgage on his residence to the Small Business Administration to secure his personal liability on the loan to his corporation. The debtor also derives regular income as a recipient of a veteran's disability pension.

3. On January 11, 1973, Provident advanced $22,500 to the debtor, secured by a first mortgage and note with respect to the debtor's residence in Valley Cottage, Rockland County, New York.

4. Thereafter the debtor defaulted in payment under the Provident mortgage, resulting in Provident's obtaining a judgment of foreclosure and sale from the New York Supreme Court, Rockland County, dated January 9, 1980, in the amount of $17,985.12, plus legal interest.

5. The portion of the debtor's default under the mortgage, together with interest and charges owed to Provident as of March 11, 1980 totals $2944.78. The debtor also owes local real estate taxes that are a lien on the property in the amount of $4733.32, plus penalties.

6. In addition to Provident's first mortgage there are four other mortgages filed against the debtor's residence as follows:

Tappan Zee Capital has filed a claim under its second mortgage for $25,812.94. A third mortgagee is held by the Small Business Administration in the sum of $50,000 as collateral security under the debtor's personal guarantee of his corporation's obligations. A claim under a fourth mortgage held by Howard Mann has been filed in the sum of $343.91. A fifth mortgage was given to the New York Department of Social Service to secure the welfare payments and food stamps advanced to the debtor approximating $2,000.

7. The uncontroverted evidence introduced by Provident's real estate expert reveals that the current market value of the debtor's residence is approximately $39,000.

Accordingly, the debtor lacks equity in the property in question, although Provident has a cushion of approximately $21,000 above its first mortgage.

8. The debtor's Chapter 13 plan provides that "commencing one month after confirmation of the plan, the debtor shall make such payments from his earnings as shall pay, on a current basis, the monthly installments due to . . . (the first and second mortgagees) . . . and the debtor shall additionally pay to the 1st mortgagee (to be held in escrow by it) on a monthly basis, an amount equal to one-twelfth of the annual real property taxes on the mortgaged premises."

9. The debtor's plan also proposes to pay the first and second mortgagees the arrearages of principal and interest due and owing as of the date one month after confirmation of the plan, such payments to commence one year after confirmation of the plan and to be made in twelve equal monthly installments.

10. At the hearing the debtor's counsel amended the provision with respect to making up the arrearages by offering to pay Provident's arrearage of $2944.78, as of March 11, 1980, together with interest within ten days, exclusive of attorneys' fees which would be paid separately as allowed by the court. The tax arrearage would be paid as stated in the plan during the one year after confirmation and that meanwhile, all current mortgage obligations would be paid when due, including the escrow payments for real estate taxes.

11. To demonstrate his ability to perform, the debtor introduced as a witness a young woman who is a fashion model with one of New York City's leading model agencies. The model testified that she was ready, willing and able to make up the debtor's default under his first mortgage. In support of her ability to comply, the model testified that she earned $125 per hour; $1,000 per day and approximately $150,000 per year. She also stated that the debtor is her business manager and that for his services he will receive 15 per cent of her earnings.

## DISCUSSION

At issue in this Chapter 13 case is a claim against the debtor held by Provident secured only by a first mortgage against real property used as the principal residence of the debtor. The debtor is confronted with the mandate under Code § 1322(b)(2) that he cannot modify the rights of holders of secured claims secured only by a security interest in real property that is the debtor's principal residence. However, the debtor acknowledges this limitation but desires instead to provide for the curing of his defaults under his mortgages, within a reasonable time and for the maintenance of payments while the case is pending, as authorized under Code § 1322(b)(5). The last payment under Provident's mortgage, before foreclosure, was not due until 1993, much later than the date on which the final payment under the plan is due.

The debtor has defaulted under the first mortgage against his principal residence held by Provident, with respect to which there is an arrearage of approximately $2944.78, exclusive of taxes and attorneys' fees. Provident's judgment of foreclosure is for $17,985.12. The market value of the debtor's residence is approximately $39,000; although the debtor lacks equity as to the second mortgage, as well as the other mortgages.

There is no question that Provident is adequately protected by its cushion of approximately $21,000 in excess of its secured claim. In the light of the debtor's offer to cure within ten days the default to Provident, amounting to approximately $2944.78 and to continue to pay all obligations on a current basis, paying the arrearage in taxes during one year after confirmation, it would be contrary to the spirit of Chapter 13, to permit the debtor to lose his residence when the payment of $2944.78 would cure the default on his first mortgage.

Unlike Chapter 11, which by definition is a "Reorganization" chapter designed to assisting distressed businesses, Chapter

13 is directed to consumer relief so as to enable an individual debtor with regular income to develop and perform, under court supervision and protection, a plan for the repayment of his debts over an extended period of time, rather than opting for liquidation under Chapter 7. See *Report of the Committee on the Judiciary*, H.R.95–595, 95th Cong. 1st Sess. 1977 p. 118. Thus, it is intended that the debtor should have an opportunity to protect his assets by agreeing to repay his creditors while retaining his property during the Chapter 13 proceeding. The debtor's retention of his residence is palpably envisioned under Chapter 13 provided his plan and the proposed financial arrangements can pass muster. Therefore, not only must the default on the first mortgage be cured, but additionally, the real estate tax arrearage must be satisfied within a reasonable time. There is no evidence that a payment during one year after confirmation would constitute an unreasonable extension as long as current taxes are also paid.

Should the debtor fail to pay to Provident the $2944.78 within ten days, as offered, or fail to make any of the current payments, including a one-twelfth escrow obligation for taxes, then Provident shall be entitled to an order from this court lifting the automatic stay. In the meantime the stay shall continue, pending further developments in this case.

### CONCLUSIONS OF LAW

1. The vacation of the stay shall be suspended conditioned on, and as long as, the debtor makes the payments required in accordance with this decision and at the times specified.

2. The debtor shall pay to Provident the sum of $2944.78 with interest within ten days from this date.

3. The debtor shall make the monthly payments of principal and interest required under Provident's mortgage on the first day of each month, commencing May 1, 1980. The debtor shall pay to Provident in escrow on a monthly basis, commencing May 1, 1980, an amount equal to one-twelfth of the annual real property taxes on the mortgaged premises.

4. The real estate tax arrearages shall be cured during the year commencing one year after confirmation of the plan.

5. Counsel for Provident may schedule a hearing to determine the allowed counsel fees under the mortgage and the manner of their payment.

IT IS SO ORDERED.