**In the Matter of Frances WILSON, Debtor.**

**Bankruptcy No. 81-B-20175.**

United States Bankruptcy Court, S. D. New York.

June 30, 1981.

Jeffrey L. Sapir, Yonkers, N.Y., Standing Chapter 13 trustee.

Irving H. Picard, New York City, U.S. Trustee, Cornelius Blackshear, New York City, Asst. U.S. Trustee, of counsel.

R. Mark Goodman, White Plains, N.Y., of counsel for Salzman, Ingber & Winer, New York City, Pope, Billups, Sneed & Harris, New York City, for debtor.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The standing Chapter 13 trustee and the United States Trustee have jointly applied to this court, pursuant to 11 U.S.C. § 329(b) and Bankruptcy Rule 220, to review the fee arrangement between the law firm of Salzman, Ingber & Winer, and its client, Frances Wilson, the above-captioned Chapter 13 debtor. The applicants seek an order directing the law firm to remit to the debtor the fee already paid to them for this case.

## FINDINGS OF FACT

1. The debtor's petition under Chapter 13 of the Bankruptcy Code 11 U.S.C. § 1301 *et. seq.*, was filed with this court on March 27, 1981. At the time, a second mortgagee with respect to the debtor's multi-family residence was proceeding with a foreclosure action in the state court. The property is located on Warwick Avenue in Mount Vernon, New York. The filing of the Chapter 13 petition had the effect of automatically staying the foreclosure action, as directed under Code § 362(a).

2. The debtor's petition states that she retained the law firm of Salzman, Ingber & Winer as her counsel and that she agreed to pay them for their services the sum of $660, including court costs. The attorney's compensation disclosure statement which was filed with the petition on March 27, 1981, pursuant to Bankruptcy Rule 219(b), states that the debtor agreed to pay $725 as a fee, of which $350 had been paid prior to the . filing and that the firm would render legal services in behalf of the debtor in connection with the case.

3. Mr. Winer, a member of the firm of Salzman, Ingber & Winer, testified that the discrepancy between the $660 figure and the $725 fee was due to the fact that the petition was prepared on the eve of foreclosure and was typed at night, thereby warranting a larger fee than the $660 sum the firm normally charges for such services. The debtor's husband testified that no other figure than $660 was specified.

4. The debtor's husband testified that all of the information for the preparation of the Chapter 13 petition was provided by him because he was familiar with the details and that the residence in question was in his wife's name because he was concerned about any judgment that might be obtained against him in the course of his work as a truck driver. Indeed, the debtor, Frances Wilson, never even met Mr. Winer, or any member of his firm. She signed the petition the morning after it was prepared in the office of the law firm at the instruction of one of the secretaries. Hence, Mr. Winer, who was in charge of this case for his firm, never consulted with his nominal client before the petition was filed. The Chapter 13 petition was filed on her behalf since she was the named owner of the property which was then the subject of the state court foreclosure action. The debtor's husband did not file any petition for relief.

5. On April 13, 1981, shortly after this debtor's Chapter 13 petition was filed, Herbert L. Johnson, the second mortgagee on the debtor's residence, who was the plaintiff in the state court foreclosure action commenced an adversary proceeding in this court seeking relief from the automatic stay so as to proceed with the sale of the debtor's residence in accordance with the foreclosure judgment that had previously been entered in the state court. Salzman, Ingber & Winer filed an answer on behalf of the debtor in which it was alleged that the debtor had an equity in her residence and that the complaint should be dismissed.

6. No attorney from the firm of Salzman, Ingber & Winer appeared at the adversary trial on April 29, 1981. Instead, R. Mark Goodman, Esquire, an attorney with an office in White Plains and who was not affiliated with the firm of Salzman, Ingber & Winer, appeared to represent the debtor. Neither the debtor nor her husband was ever advised by Salzman, Ingber & Winer that an attorney other than one from that firm would represent the debtor at the adversary proceeding. Indeed, the debtor was not even apprised of the hearing and did not appear for it.

7. Mr. Goodman interrogated two witnesses in the course of the plaintiff's case. It appeared that the debtor's residence was purchased only a few months earlier at a cost of $75,000 and that the foreclosure judgment, together with costs, and unpaid taxes exceeded $85,000, to which Mr. Goodman stipulated. Upon the completion of the second mortgagee's case, Mr. Goodman's routine request to dismiss the complaint was denied and he was directed to proceed with the debtor's case. At this time Mr. Goodman requested an adjournment on the ground that he had been asked by Salzman, Ingber & Winer on the previous day (April 28th) to appear in its place at the trial and that he was not prepared to present witnesses or evidence. He stated that he "was under the impression that this was a submission of motion papers." This court noted that the plaintiff had travelled from Florida to attend the trial and that Mr. Goodman never indicated he was unprepared until after the plaintiff had completed his case. The motion for an adjournment was denied and the relief from the stay was granted from the bench on the ground that the plaintiff had satisfied his burden, imposed under Code § 362(g)(1), of proving that the debtor lacked equity in the property in question within the meaning of Code § 362(d)(2)(A) and that the second mortgagee was not adequately protected in the context of Code § 362(d)(1).

8. Mr. Goodman's participation in this case was explained in his affirmation, dated June 18, 1981, which contains among other information, the following facts with respect to this case:

"2. I am an individual practitioner with offices at 199 Main Street, White

Plains, New York. I am not, and have never been a member, partner or associate of the firm of SALZMAN, INGBER & WINER (hereinafter SALZMAN, et. al.).

3. From approximately August, 1980, through January, 1981, SALZMAN, et. al., was a sub-tenant in the same suite of offices in which I rent an office. During this time I had no contact with any member of that firm, since the members of said firm conducted interviews with prospective clients after normal business hours.

. . . . .

15. On April 28, 1981, in the afternoon of that day, I was asked by a secretary at the firm of SALZMAN, et al., whether I could attend a hearing to be held at 11 o'clock a. m. on April 29, 1981, *In re Frances Wilson*, No. 81/B/20175. Since I had seen neither the petition nor any motion papers and had never observed a Bankruptcy Court hearing, I did not think that I could be of any help. I asked to speak with Mr. WINER. In the course of our conversation, Mr. WINER, assured me that this was a 'routine' and that the motion papers on file with the Court were self-explanatory. I was not advised that under 11 U.S.C. § 362(g) the party opposing relief from a stay had the burden of proof on all issues other than the debtor's equity in the property. Moreover, I was told that it was not necessary that either the debtor or witnesses in her behalf be called at said hearing. Prior to the hearing I copied all papers on file at the Bankruptcy Court and researched the issues of 'adequate protection' under 11 U.S.C. § 362(d) and the burden of proof under 11 U.S.C. § 362(g). It was apparent that the debtor had no equity in the premises based on the motion papers and the petition. I assumed (improperly) that adversary proceedings, like contested motions in New York Supreme Court, did not require testimony and, hence, that the motion papers would be determinative as advised by Mr. WINER. In any event, I did not know how to reach the

debtor and did not have adequate time to prepare for a plenary hearing. At the hearing, I was therefore, limited to a cross-examination of the creditor's witnesses. When my motion to dismiss the creditor's case was denied, I could not continue and my request for adjournment was denied and the stay lifted.

16. Immediately upon returning to my office on April 29, 1981, I contacted SALZMAN, et al. and informed the secretary and Mr. WINER that I could not appear in their behalf again. A copy of a letter sent to Mr. WINER on April 29, 1981 is enclosed herein as Exhibit "B".

17. During the months of March and April, 1981, when I appeared in behalf of SALZMAN, et. al. in the White Plains Bankruptcy Court, I was compensated at the rate of $50.00 per appearance for most appearances. The purpose of the fee was to compensate me for time expended and, upon information and belief, my participation could not have been predicted at the time the petitions were prepared and the statements pursuant to Rule 219(b) were filed. Therefore, I am not aware of any agreements or arrangements (written or oral) which contemplated 'fee-splitting' or the sharing of compensation (directly or indirectly) as that term is used in 11 U.S.C. 504(a)."

9. After the granting of the second mortgagee's request for relief from the stay, the debtor obtained other counsel and obtained from this court an order to show cause, dated May 19, 1981 returnable on May 28, 1981, requesting that the stay be reinstated and the sale of the debtor's residence enjoined. It was alleged that there was "newly discovered evidence" showing that the house was worth more than the $75,000 listed in the debtor's Chapter 13 statement.

10. On the return date of May 28, 1981, the debtor introduced in evidence the appraiser who previously valued the residence at $75,000. The appraiser testified that in the interim the value of the property had appreciated to $85,000. Nevertheless, the foreclosure judgment, costs and

unpaid taxes exceeded $85,000. Accordingly, the motion to reinstate the stay was denied because once a mortgage has been merged into a judgment it can no longer be reinstated for the purpose of supporting payments under a Chapter 13 plan. See *In re Butchman*, 4 B.R. 379, 2 C.B.C.2d 174, 177 (Bkrtcy.S.D.N.Y.1980). Moreover, this court also concluded that the debtor still had no equity in the residence and the second mortgagee's interests were not adequately protected.

11. All was lost for the debtor, because her new counsel petitioned for a further hearing on June 25, 1981, the return date of the joint application of the United States Trustee and the standing Chapter 13 Trustee directed to a review of the fee arrangement of Salzman, Ingber & Winer. As a result of a conference held on June 25th, the second mortgagee and the debtor entered into an agreement whereby the debtor was permitted to remain in possession and the foreclosure sale was discontinued. However, there still remained for determination the question concerning the conduct of Salzman, Ingber & Winer in this case and their fee arrangement.

12. From the foregoing facts it is plain that the law firm of Salzman, Ingber & Winer failed to represent their nominal client, Frances Wilson, in a competent and professional manner. As a result of their neglect of her interests in this case and in the property in question, she was required to engage other counsel in order to prevent the loss of her residence and the preservation of her proposed Chapter 13 plan. Such callous disregard of a debtor's rights by retained counsel will not be countenanced by this court.

## DISCUSSION

■ Code § 329 expressly authorizes the court to review all compensation paid to an attorney for a debtor and to determine the reasonableness of the payment. If the compensation exceeds the reasonable value of such services, the court may cancel any such agreement or order the return of any such payment, to the extent found to be exces-

sive. In order to inform the court as to the compensation paid or promised for the legal services rendered or to be rendered in connection with the bankruptcy case every attorney for a debtor is required to file a disclosure statement in accordance with the requirements of Bankruptcy Rule 219(b). In this case the disclosure statement filed by the law firm of Salzman, Ingber & Winer revealed a higher fee than as stated in the debtor's petition. However this discrepancy is minor when compared with the amount actually received by them and the reasonable value of the services performed by them, or more accurately, which they failed to perform, in consideration of the fee received and to be received by them.

The United States Trustee for the Southern District of New York, appointed by the Attorney General, 28 U.S.C. § 581, in accordance with the pilot program under Section 408 of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, and his standing Chapter 13 trustee, have instituted this proceeding for an order that the counsel fee already paid in this case be remitted to the debtor. As noted by this court in *In re Butchman*, 4 B.R. 379, 3 C.B.C.2d 377 (Bkrtcy.S.D.N.Y.1980), the United States Trustee is uniquely stationed to seek a review of the fee arrangement between a debtor and counsel for the debtor. This is one of the important functions performed by the United States Trustee in supervising the administration of bankruptcy cases. 28 U.S.C. § 586(a)(3). In removing the Bankruptcy Judge from presiding or participating at creditors' meetings, as reflected in Code § 341(c), it was intended that the Bankruptcy Judge should exercise a judicial role with respect to issues that should more appropriately be raised by others. Hence, the United States Trustee performs the vital task of policing the administration of bankruptcy cases in the pilot districts and presenting to the court for resolution matters that impair or run counter to the administrative process contemplated under the Bankruptcy Code.

■ In this case, the United States Trustee and his standing Chapter 13 Trus-

tee were appropriately concerned when they learned that the debtor, Frances Wilson, never even met with her attorneys before they filed a Chapter 13 petition on her behalf. That counsel may properly obtain necessary information to prepare a petition from other sources, including the debtor's spouse does not excuse counsel from at least consulting with their client before they file a Chapter 13 petition for her. At bare minimum, the client should at least know who to look for when she enters the courtroom. More importantly, if counsel is not going to appear with the debtor in court to respond to an adversary proceeding, counsel does not have an obligation to advise the debtor of this important fact and inform the debtor that another attorney is going to be there instead. To be sure, the debtor may not be willing to agree that her attorney who was paid to represent her, should be permitted to delegate this responsibility to an unknown and untested standby. Needless to say, the debtor is entitled to expect that when counsel appears for a litigated adversary proceeding he will be prepared to present her case, regardless of his doubts as to its merits.

█ It is no excuse for counsel to be so indifferent to the rights of one of their many clients simply because the volume of work in the now fertile Chapter 13 area required counsel's presence in other Bankruptcy Courts in the Metropolitan area, that they should be permitted to call upon an unprepared attorney who maintained an office near this court to defend an adversary proceeding in which the debtor's residence was at stake. Not only does such conduct reflect the lowest measure of professional insensitivity to the interests of the client but it also represents a deviation from the high standards of ethical responsibility required of an attorney in the performance of legal services. As this court stated in *In re Rivera*, 6 B.R. 680, 3 C.B.C. 157 at 61 (Bkrtcy.S.D.N.Y.1980):

> "It is axiomatic that an attorney owes a sacred duty to his client and to the court to perform his legal services with integrity and earnest consideration. If additionally, counsel performs his services in a professionally competent manner, both the court and the client are benefitted."

*Canon 1, Ethical Considerations 1–1, Code of Professional Responsibility, 29 McKinney's Consolidated Laws*, states that: "Maintaining the integrity and improving the competence of the bar to meet the highest standards is the ethical responsibility of every lawyer." Moreover, Canon 6 requires competent representation and Canon 7 requires counsel to represent a client zealously within the bounds of the law.

In this case, the debtor's representation by the firm of Salzman, Ingber & Winer was neither competently performed nor zealously provided. Had it not been for the settlement with the foreclosing second mortgagee which the debtor's new counsel arrived at, the debtor and her family would have lost their home. Therefore, there is no basis for any portion of the fee which was paid to Salzman, Ingber & Winer in connection with this case to be retained by them. Accordingly, this firm is directed to remit every dollar that they collected from the debtor, which her husband said amounted to $350. It goes without saying that the balance of the expected fee is cancelled.

## CONCLUSIONS OF LAW

1. The joint application of the United States Trustee and the standing Chapter 13 trustee is granted.

2. The firm of Salzman, Ingber & Winer shall remit to the debtor all funds received by them in connection with this case and they are to receive no further compensation in this regard.

IT IS SO ORDERED.