**In re Jimmie L. YOUNG, Debtor.**

**ST. PAUL FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Plaintiff,**

v.

**Jimmie L. YOUNG and Debra A. Young, Defendants.**

**Bankruptcy No. 82 B 00764. Adv. No. 82 A 0320.**

United States Bankruptcy Court, N. D. Illinois, E. D.

Aug. 17, 1982.

---

Frank R. Martin, Righeimer, Righeimer & Martin, P. C., Jeanne T. Goshgarian, Chicago, Ill., for plaintiff.

David N. Kornfeld, Kornfeld & Spitz, P. C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action comes to be heard on a complaint by St. Paul Federal Savings and Loan Association of Chicago (hereinafter referred to as St. Paul) to modify the automatic stay granted to the debtor, Jimmie L. Young (hereinafter referred to as debtor).

On December 21, 1976, the debtor and his wife granted to St. Paul a mortgage on their home located at 1109 North Long Avenue, Chicago, Illinois, as security (collateral) for a note dated December 21, 1976, in the amount of $18,900.00. The note bore an interest rate of 9%, and the total monthly payments, including tax escrow, hazard insurance escrow, and life insurance escrow, were $239.12. In May of 1981, the debtor became delinquent in his monthly payments. As a result, the remaining balance of the note was accelerated, and St. Paul filed a suit to foreclose the mortgage in the Circuit Court of Cook County, Illinois on September 23, 1981. That court entered a Judgment of Foreclosure and Sale on January 5, 1982, ordering the debtor to pay St. Paul $22,123.91 together with 9% interest within three days. When the debtor failed to make this payment, a sheriff's sale was scheduled for February 4, 1982.

On January 19, 1982, the debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. The petition listed St. Paul as having two claims, a mortgage balance of $20,000.00 and a delinquent balance of $1,900.00. The debtor has proposed a plan to cure the mortgage arrearages within 24 months, while making current mortgage payments outside the plan directly to St. Paul.

On January 28, 1982, St. Paul filed the complaint herein. St. Paul urges that the mortgage was merged into a valid Judgment of Foreclosure and Sale, that the debtor's rights are defined by that Judgment, that the debtor cannot cure his prejudgment default through his Chapter 13 proceeding, and that unless the debtor is

able to pay St. Paul the full amount set forth in the Judgment during the Chapter 13 plan, the automatic stay should be modified so that the sheriff's sale of the debtor's home can proceed.

Consequently, the issue to be decided by this court is whether, after a debt has been accelerated and a Judgment of Foreclosure and Sale has been entered, but before a judgment sale has taken place, a debtor can cure mortgage arrearages and reinstate the original mortgage schedule.

The resolution of this issue depends upon the application of Section 1322(b) of the Bankruptcy Code. The relevant portions of Section 1322(b) provide:

(b) . . . the plan shall—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

\*     \*     \*     \*     \*     \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

\*     \*     \*     \*     \*     \*

(10) include any other appropriate provision not inconsistent with this title.

11 U.S.C. § 1322(b)(2), (3), (5), (10) (1979).

■ The use of Section 1322(b) to cure accelerated debts has caused much controversy and little uniformity. Some bankruptcy courts have held that the ability to cure a default depends on whether the applicable state law follows the title theory or the lien theory of mortgages. Under the title theory, the creation of a mortgage is a transfer of title to the mortgagee. *In re Crawford*, 2 B.R. 589, 593–94 (Bkrtcy.N.D. Ill.1980). Therefore, upon default and fore-

closure, the mortgage merges into the foreclosure judgment, and there is no debt in existence which can be cured. *See In re Jenkins*, 14 B.R. 748, 749–50 (Bkrtcy.N.D.Ill. 1981). This is the approach taken by Illinois law. *Id.*

■ The lien theory, however, recognizes the true nature of a mortgage as a debt instrument. *Crawford*, 2 B.R. at 594. Consequently, the mortgage and the judgment are not merged, and the defaulted mortgage is capable of being cured. *See e.g., United Companies Financial Corp. v. Brantley*, 6 B.R. 178, 189 (Bkrtcy.N.D.Fla.1980).

Still other courts feel that Section 1322(b) should be used liberally due to the intent of Chapter 13 to foster debtor rehabilitation. *See In re Taddeo*, 9 B.R. 299, 303 (Bkrtcy.E. D.N.Y.1981) *aff'd*, 15 Bkrtcy. 273 (D.C.E.D. N.Y.1981), *aff'd*, 685 F.2d 24 (2d Cir. 1982); *In re Arvinger*, No. 81 B 11230, Slip op. at 3 (Bkrtcy.N.D.Ill.1982). Since Congress placed such great emphasis on the ability of the debtor to be rehabilitated, the courts which use this approach permit the curing of accelerated mortgages despite the status of state law. *Taddeo*, 14 B.R. at 276 ("the purposes of Chapter 13 would be violated if the defendant-debtors were to lose their residence because they failed to make three mortgage payments . . .").

In the case at bar, this court finds that the approach based on the principle of debtor rehabilitation to be most persuasive. First, the title theory is a mere fiction, created to circumvent the ecclesiastical laws of thirteenth century England. *Crawford*, 2 B.R. at 594. Although the title theory is part of Illinois law, about two-thirds of the states have abandoned it in favor of the lien theory. *Id.* Accordingly, this archaic device should not be determinative of debtor-creditor rights at the present day under the Bankruptcy Code.

■ Second, one of the primary purposes of Chapter 13 rehabilitation is to save homesteads. *First Investment Co. v. Custer*, 18 B.R. 842, 846 (Bkrtcy.S.D.Ohio 1982). Almost every lien document, whether it be

securing personal or real property, has an acceleration provision. *Id.* By prohibiting a debtor from curing defaults on loans which have been accelerated the intent of Chapter 13 to facilitate debtor rehabilitation would be defeated. In addition, when Section 1322(b)(5) and Section 1328(a)(1) are read together, it appears that the congressional intent behind Section 1322(b)(5) is to place "the parties in the position they would have been if no default had occurred." *Id.* at 847.

■ Finally, in a recent decision, the United States Court of Appeals for the Second Circuit squarely addressed the issue of whether a Chapter 13 debtor, after a debt has been accelerated, can cure arrearages and reinstate the original mortgage. *In re Taddeo,* 685 F.2d 24 at 26, (2d Cir. 1982). The Second Circuit held that when Congress empowered a Chapter 13 debtor to cure defaults under Section 1322(b)(5), "Congress intended to allow mortgagors to 'de-accelerate' their mortgage and reinstate its original payment schedule." *Id.* at 26. This decision was based on the Legislative History of Section 1322(b)(5) and the policy considerations behind Chapter 13, both of which indicate that Congress "intended to permit the cure and de-acceleration of a secured long-term residential debt accelerated prior to the filing of a Chapter 13 petition." *Id.* at 27. The court also found that Section 1322(b)(2) does not limit the debtor's ability to cure under Sections 1322(b)(3) and (b)(5). Most significantly, the *Taddeo* court concluded that the "overriding rehabilitative purpose of Chapter 13" expands a debtor's rights, so that a debtor whose mortgage was accelerated under state law is not limited to only state law cure provisions. *Id.* at 28–29 (quoting *In re Davis,* 15 B.R. 22, 24 (Bkrtcy.D.Kan.), aff'd, 16 B.R. 473 (D.Kan.1981)).

Consequently, this court holds that under Section 1322(b)(5) the debtor herein may cure his mortgage arrearages within his Chapter 13 plan and reinstate the original mortgage schedule. St. Paul's complaint to modify the automatic stay is denied.

The debtor is to furnish a draft order in accordance with this opinion within 5 days.*

---

* This decision is entered in compliance with the stay of enforcement until October 4, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* — U.S. —, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the General Or- der of the United States District Court for the Northern District of Illinois (July 14, 1982), and the decision of the United States Court of Appeals for the Seventh Circuit in *Farmers Union Central Exchange, Inc. v. Hertz,* No. 82–2211 (7th Cir. August 13, 1982).