In re Larry Eugene IVORY, Gail Elizabeth Ivory (aka Gail Elizabeth Thompson), Debtor(s).

Bankruptcy No. 383–00891.

United States Bankruptcy Court, D. Oregon.

Aug. 19, 1983.

Donald Howe, Salem, Or., for Dept. of Veteran's Affairs.

Magar E. Magar, Portland, Or., for debtors.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

This matter comes before the court on the objection of the Department of Veterans' Affairs ("DVA") to confirmation of the debtors' chapter 13 plan. The court considered the objection at the hearing on confirmation held on June 9, 1983.

The debtors' plan proposes to cure a pre-petition default on a residential mortgage held by the DVA by making a lump sum payment of $15,000 upon confirmation of the plan and by paying the balance owed in monthly installments of $315.00 over the lifetime of the plan. The amount of the proposed installments approximates the regular monthly payments which were required under the terms of the original note except that the payoff date would be 15–20 years earlier under the plan than it would have been under the original note.

The bulk of the $15,000 lump sum payment will come from two insurance drafts, totalling $12,580, which are made payable to the debtors, the DVA, and the debtors' attorney. These insurance proceeds were paid pursuant to an insurance agreement between the debtors and Allstate Insurance Co. covering the debtors' residence. A fire occurred in the debtors' residence on August 18, 1982, and two weeks later the residence was vandalized. Subsequent to these events, on September 22, 1982, the residence was sold at a foreclosure sale to the DVA. At about the same time, the debtors hired Mr. Magar to represent them in their attempts to recover against the insurance company after their claim had been denied. The agreement between the debtors and Mr. Magar provided that the debtors would pay to Mr. Magar 10% of any recovery or $3,000.00, whichever was less. On March 18, 1983, the debtors filed their chapter 13 petition. Soon thereafter, the debtors' attorney asserted a possessory lien on the insurance drafts and tendered them to the trustee. The plan proposes that Mr. Magar be paid upon his possessory lien from the insurance proceeds when the plan is confirmed.

The DVA contends that the debtors' proposed cure and payment in full over the life of the plan is not permitted where, as here, a mortgage default has triggered a foreclosure judgment and sale of the property prior to the filing of a chapter 13 petition. The DVA further contends that it is entitled to the insurance proceeds under the terms of the insurance agreement.

The issues before the court are as follows: (1) whether a chapter 13 debtor can cure a default on a residential mortgage after a final decree of foreclosure has been entered and a sale has been made; (2) if a post sale cure is permissible, whether it can be effected by paying the arrearages which triggered the default and the mortgage debt in full within the life of the plan; and (3) who is entitled to the insurance proceeds, the DVA or the debtors and the debtors' attorney.

11 U.S.C. § 1322(b) provides that a chapter 13 plan may:

. . . . .

"(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

. . . . .

(3) provide for the curing or waiving of any default;

. . . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

. . . . .

(10) include any other appropriate provision not inconsistent with this title."

The case law under 11 U.S.C. § 1322(b) indicates that the courts are not in agreement over whether and under what circumstances a cure can be allowed once a default on a mortgage debt has triggered acceleration of the debt, a judgment or a sale. The differences in viewpoint may be generally categorized as follows:

(1) Courts that hold that a debtor may not cure a default once a mortgage debt has been accelerated: *In re Wilson*, 11 B.R. 986 (Bkrtcy.S.D.N.Y.1981); *Matter of LaPaglia*, 8 B.R. 937 (Bkrtcy.E.D.N.Y.1981); *In re Allen*, 17 B.R. 119, 8 BCD 945 (Bkrtcy.N.D. Ohio 1981).

(2) Courts that hold that a debtor may cure a default where the mortgage debt has been accelerated provided that no foreclosure judgment has been entered: *Percy Wilson Mortgage & Finance Corp. v. McCurdy*, 21 B.R. 535 (Bkrtcy.S.D.Ohio W.D.1982); *In re Maiorino*, 15 B.R. 254 (Bkrtcy.D.Conn.1981); *In re Pearson*, 10 B.R. 189 (Bkrtcy.E.D.N.Y.1981).

(3) Courts hold that a debtor may cure a default where a state court judgment of foreclosure has been entered provided that no sale has taken place: *In re Acevedo*, 26 B.R. 994 (D.E.D.N.Y.1982); *In re James*, 20 B.R. 145, 9 BCD 208 (Bkrtcy.E.D.Mich. 1982); *In re Brantley*, 6 B.R. 178 (Bkrtcy.N. D.Fla.1980).

(4) Courts that place no express limitation on the debtor's right to cure a default after acceleration: *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982); *In re Sapp*, 11 B.R. 188 (Bkrtcy.S.D.Ohio E.D.1981); *In re Davis*, 16 B.R. 473 (D.Kan.1981). Or after a judgment has been entered: *In re Young*, 22 B.R. 620 (Bkrtcy.N.D.Ill.E.D.1982); *In re Breuer*, 4 B.R. 499, 6 BCD 136 (Bkrtcy.S.D. N.Y.1980).

(5) Courts that hold that a debtor may cure a default where a foreclosure sale has been held provided that the debtor's right of redemption under state law has not expired: *In re Johnson*, 29 B.R. 104 (Bkrtcy.S. D.Fla.1983); *In re Chambers*, 27 B.R. 687 (Bkrtcy.S.D.Fla.1983); *In re Taylor*, 21 B.R. 179 (Bkrtcy.W.D.Mo.1982); *In re Thompson*, 17 B.R. 748 (Bkrtcy.W.D.Mich.1982).

Most courts agree that the debtor may use § 1322(b)(5) to cure a default where the mortgagee has not yet accelerated his debt. *See e.g. In re Pearson*, 10 B.R. 189, 193 (Bkrtcy.E.D.N.Y.1981); *In re Hartford*, 7 B.R. 914 (Bkrtcy.D.Me.1981).

This court has considered the question of post default cure in two cases. In *In re Stone*, 27 B.R. 8 (Bkrtcy.D.Or.1982) the court held that a chapter 13 debtor could cure a default and reinstate the periodic payment provision of a land sale contract

where the creditor had declared the debt accelerated prior to the chapter 13 filing. In *In re Seidel/In re Girgis,* 31 B.R. 262 (Bkrtcy.D.Or.1983), the court held that a debtor could not cure a default by extending the final maturity date provided in an agreement. In these latter cases, the debtors had failed to make the final balloon payments which had become due under their contracts prior to their filing under chapter 13.

Neither of these cases addresses an attempt by a debtor to cure a default on a mortgage where the mortgaged property has already been sold. However, consonant with the court's earlier decisions is the court's view that a debtor may cure a default after a foreclosure sale has been held provided that at the time of filing, the debtor still retains an interest in the sold property.

■ Under Oregon law, the purchaser at a foreclosure sale receives a certificate of sale containing a description of the property sold, the price paid, and a provision regarding redemption. ORS 23.510. The certificate of sale evidences the purchaser's right to possession of the premises. ORS 23.590. Upon expiration of the one year redemption period, ORS 23.560, and delivery of the sheriff's deed, ORS 23.600, the purchaser will secure legal title to the property. *Kaston v. Storey,* 47 Or. 150, 152, 80 P. 217 (1905).

■ Thus, it is clear that a debtor retains an interest in the property until the statutory redemption period has run and legal title has passed. Upon the filing of a petition under the Bankruptcy Code, all legal and equitable interests of the debtor in property as of the commencement of the case become property of the estate. 11 U.S.C. § 541. In the present case, the one year statutory redemption period, which began to run from the date of the sale on September 22, 1982, had not yet expired when the debtors filed their chapter 13 petition on March 18, 1983. Thus, the debtor's right of redemption became property of the estate at the time of the debtors' filing. The fact that the debtors still retain an interest in the sold property gives them the right to effect a cure under 11 U.S.C. § 1322(b)(5).

It has been argued in other cases that it would be inappropriate to allow deacceleration and cure after the entry of a foreclosure judgment where state law provides that a trust deed or mortgage merges into a foreclosure judgment. Several courts have accepted this argument and have held that the ability to cure a default depends upon whether the applicable state law follows the title theory or a lien theory of mortgages. *See e.g. In re Maiorino,* 15 B.R. 254 (Bkrtcy. D.Conn.1981); *In re Brantley,* 6 B.R. 178 (Bkrtcy.N.D.Fla.1980). Under the reasoning of these cases, the fact that a decree of foreclosure and sale under Oregon law extinguishes the lien of the mortgage as of the date the decree is entered and redemption does not effect a revival of the mortgage lien, *Call v. Jeremiah,* 246 Or. 568, 425 P.2d 502 (1967), abrogates any right the debtor may have to cure and reinstate payments under § 1322(b)(5) since there is no mortgage left to cure or reinstate. According to this view, to effect a post judgment or post sale in a title theory jurisdiction, the debtor must pay the entire redemption amount during the life of the plan rather than merely pay arrearages and reinstate the payment plan under the mortgage. In re *Kokkinis,* 22 B.R. 353 (Bkrtcy.N.D.Ill. 1982).

However, this court agrees with those courts that have interpreted the right to cure under § 1322(b)(5) as unaffected by certain state laws limiting cure. *In re Anderson,* 29 B.R. 563 (Bkrtcy.E.D.Va.1983); *In re Young,* 22 B.R. 620 (Bkrtcy.N.D.Ill.E. D.1982); *In re Thompson,* 17 B.R. 748 (Bkrtcy.W.D.Mich.1982); *In re Davis,* 16 B.R. 473, 8 BCD 635 (Bkrtcy.D.Kan.1981). According to this view, the Bankruptcy Code establishes its own redemption design in lieu of state laws. 5 Colliers 1322.-01[3][E]. To support this position, the court in *In re Thompson* analyzed the treatment of secured debts in chapter 13 under the Bankruptcy Act of 1898. The court concluded that there is no indication that Con-

gress intended to alter the interpretation advanced by Act cases which held that "a secured creditor was not entitled to all rights afforded him under contract terms or state law, but rather need only have his secured position protected while the reorganization proceeded." *Thompson* at 752.

The Second Circuit Court of Appeals, in a case which dealt with an attempt to cure before a foreclosure judgment, agrees stating in dicta that:

" 'curing a default' in chapter 11 means the same as it does in chapter 7 or 13: the event of default is remedied and the consequences are nullified. *A state law to the contrary must fall before the Bankruptcy Code.*" *In re Taddeo,* 685 F.2d 24 (2nd Cir.1982) (emphasis added).

■ The rehabilitative purpose of chapter 13 in general and the literal language of § 1322(b)(5) in particular further support this view. Chapter 13 was intended to give a debtor with regular income the opportunity to reorganize his debts in order to retain his assets, while at the same time repay his debts in accordance with a court approved plan. Section 1322(b)(5) clearly envisions the debtor's retention of his primary asset, the family residence. *See In Re Young,* 22 BR 620, 622 (Bkrtcy.N.D.Ill.E. D.1982).

■ Section 1322(b)(5) itself does not in any way limit when a default may be cured. Instead, it provides for "the curing of any default" as long as the proposed cure occurs within a reasonable time. If Congress had intended to limit cure to preacceleration, prejudgment or presale defaults, it could have done so. It did not. Had Congress intended state laws limiting cure to apply, § 1322(b) would have been unnecessary.

The lack of limitations in § 1322(b)(5) has been interpreted by some courts as compelling a restrictive reading of the statute. These courts reason that express authority is required to negate the application of state law and void state court judgments. However, the general rule applicable to conflicts between state and federal law is that federal law preempts state law to the extent there is conflict. In addition, it is

more common for the drafters of statutes to list any exceptions or limitations which they intend to apply to a given provision.

■ Although not determinative, some sections of the Code expressly refer to state law when the intent is to make state law applicable. *See e.g.* 11 U.S.C. § 522(b)(2); 11 U.S.C. § 552(b). No such reference is made in § 1322(b)(5). Also, it is clear that the voiding of state court judgments is not taboo under the Code. *See e.g.* 11 U.S.C. § 522(f); 11 U.S.C. § 547(b).

Given the overriding rehabilitative purpose of chapter 13 and the literal language of § 1322(b)(5) which grants the debtor a nearly absolute right to cure a default, the arguments of these courts must fall. This court therefore concludes that all the steps in the process set up by contract and state law to divest a defaulting debtor of his interest in real property may be voided by the court under § 1322(b)(5) at any time prior to the final divestment of the debtor's interest.

■ It follows from the foregoing discussion that cure need not be effected by payment of the redemption amount. Cure of the arrearages which triggered the default and reinstatement of the installment payments due under the terms of the original mortgage is sufficient. In the present case, the debtors propose to pay the entire amount due and owing under the foreclosure judgment within the plan's three year term. The debtors further propose to make a lump sum payment of $15,000.00 upon confirmation of the plan.

■ Under § 1322(b)(5), only the amount of the arrearages, not the mortgage balance, must be paid within a reasonable time. Courts have uniformly held that what constitutes a reasonable time depends upon the circumstances of each case. *In re King,* 23 B.R. 779, 9 BCD 976. (Bkrtcy.App. Cal. 9th Cir.1982) (31 months); *In re Sapp,* 11 B.R. 188 (Bkrtcy.S.D.Ohio E.D.1981) (2 years); *In re Stewart,* 7 BCD 932 (Bkrtcy. E.D.Pa.1981) (3 years and 4 months); *Matter of Breuer,* 4 B.R. 499 (Bkrtcy.S.D.N.Y.

1980) (1 year); *In re Coleman*, 5 B.R. 812, 6 BCD 795 (Bkrtcy.W.D.Ky.1980) (3 years is unreasonable).

Here, the amount of the arrearages has not been disclosed to the court. However, the mortgage was executed on August 14, 1979 to secure a loan in the amount of $26,125.00. Payments were to be made over a period of twenty-eight years in monthly installments of $160.00. The DVA bid in the property at $30,151.78. Since the debtors propose to make a lump sum payment of $15,000.00 upon confirmation of their plan, it is likely that all arrearages would be cured upon confirmation. Cure upon confirmation is per se reasonable. If the court decides that the DVA rather than the debtors is entitled to the insurance proceeds of over $12,000.00, the payment of that amount directly to the DVA would also probably cover all arrearages due.

Under the present plan, the debtors propose more than reinstatement of the original payment plan. What they propose constitutes a substantial prepayment of the mortgage debt which is, of course, allowable as long as their plan meets the best interest test of 11 U.S.C. § 1325(a)(4).

However, it is not clear from the terms of the plan, the legal memoranda submitted, or the oral arguments presented whether the debtors intend (1) the curing of a default and maintenance of payments under § 1322(b)(5) with full satisfaction of the mortgage debt before its due date or (2) the modification of a judgment lien, as distinguished from a mortgage lien, under § 1322(b)(2).

What is clear is that under § 1322(b)(2) an ordinary judgment lien can be modified while a mortgage lien cannot be modified. Section 1322(b)(2) allows modification of the rights of holders of secured and unsecured claims, but forbids modification of the rights of a holder of a claim secured only by a security interest in the debtor's principal residence. The exception contained in § 1322(b)(2) is limited to a "security interest" in real property that is the debtor's principal residence. § 101(37) defines a security interest as a "lien created by an agreement". Therefore, although a judgment lien could be modified under § 1322(b)(2) as not being a claim under a lien created by an agreement, the lien of a mortgage cannot be modified since it is a lien created by an agreement. While it might be argued that the lien of a judgment of foreclosure could be modified since it is not a lien created by an agreement, to permit modification of the lien of a foreclosure judgment could, under some circumstances, give the mortgagee less rights upon a default and the taking of a foreclosure judgment than the mortgagee had before entry of the judgment. For example, where there are 24 monthly installments not yet due under a mortgage and the debtor's default in making payments under the mortgage has resulted in the entry of a foreclosure judgment, to allow the debtor to modify the judgment as he could other judgments under § 1322(b)(2), by providing for the payment of the judgment over the life of the plan, would mean that he would have more time to satisfy the judgment than he would have had to satisfy the mortgage. This result would subvert the apparent intent of Congress in enacting § 1322(b)(2) which was to provide special protection to home lenders in order to encourage them to make loans to consumers who wanted to buy their own homes. Under Oregon law the lien of the judgment relates back to the date upon which the mortgage was recorded. To be consistent with the intent of Congress to provide special protection to home mortgages, a foreclosure judgment should retain the character of a "security interest" or lien created by an agreement and therefor not a lien which could be modified under § 1322(b)(2).

■ The insurance drafts in question were issued pursuant to an insurance contract between the debtors and Allstate Insurance Co. Page 15 of the agreement provides as follows: "Loss shall be payable to the mortgagees ... to the extent of their interest." The status of the DVA on the date the damage occurred to the debtors' residence was that of mortgagee. However, subsequent to the loss, the DVA

obtained a foreclosure judgment and successfully bid the entire value of the outstanding mortgage debt at the foreclosure sale.

The Ninth Circuit has held that full or partial extinguishment of a mortgage debt, whether prior to fire loss or subsequent to fire loss, precludes to the extent thereof any recovery on a fire insurance policy by the loss payable mortgagee. *Rosenbaum v. Funcannon,* 308 F.2d 680 (9th Cir.1962). Notwithstanding this holding, it is clear from the court's discussion of the debtor's right to cure a default under § 1322(b)(5) that effecting such a cure not only reinstates the original payment schedule under the terms of the mortgage, but would also reinstate the DVA's status as mortgagee.

In order to determine the DVA's interest as mortgagee under the insurance contract, it is necessary to consider applicable state law. In *Haskin v. Greene,* 205 Or. 140, 286 P.2d 128 (1955), the Oregon Supreme Court stated that where an insurance policy contained a loss payable provision virtually identical to the one here, the mortgagee possessed a superior right to the proceeds of the policy to the extent of the mortgage debt in case of a loss while the mortgage was in full force. The mortgagee may apply the insurance money in full, or pro tanto, satisfaction of the debt, and such payment amounts to satisfaction of the mortgage to the extent of the payment or the mortgagee may hold the insurance money to discharge the debt as it becomes due if the debt is not due at the time of loss and payment.

Therefore, the court concludes that the DVA possesses a superior right to the insurance proceeds. According to 11 U.S.C. § 541(d), where the debtor holds bare legal title without any equitable interest as of the commencement of the case, the estate acquires bare legal title only. 11 U.S.C. § 541(b) provides that property of the estate does not include any power that the debtor may only exercise solely for the benefit of an entity other than the debtor.

Here, the power vested in the debtors by virtue of their bare legal title as payees under the insurance drafts may only be exercised for the benefit of the DVA. *In re Encinas,* 27 B.R. 79 (Bkrtcy.D.Or.1983). When the debtors assigned a portion of their interest to their attorney, they did not and could not assign a greater interest than they themselves possessed.

Based on the foregoing, the court finds that (1) the insurance proceeds are not property of the debtors' estate, and (2) the DVA has a right to the insurance proceeds unaffected by the foreclosure judgment and sale, the debtors' chapter 13 petition, or the debtors' assignment of a portion of their interest to their attorney.

It therefore appears that the objection of the DVA to confirmation of the debtors' chapter 13 plan must be overruled in regards to the debtors' right to cure a default under 11 U.S.C. § 1322(b)(5) and sustained in regards to the DVA's entitlement to the insurance proceeds. An order will be granted herein denying confirmation of the plan.

This memorandum opinion shall constitute findings and conclusions under BR 752.