In re John T. **CHITWOOD**, Debtor.

**McCLUNG LUMBER COMPANY, INC., J. Albert Ellett, Trustee, and David S. McClung, II, Movants,**

v.

**John T. CHITWOOD, Respondent.**

**Bankruptcy No. 7–85–00571–R.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Oct. 22, 1985.

Leon P. Ferrance, Roanoke, Va., for debtor/respondent.

John B. Weld, Roanoke, Va., for movants.

J. Glenwood Strickler, Roanoke, Va., Chapter 13 Trustee.

**MEMORANDUM OPINION
AND ORDER**

H. CLYDE PEARSON, Bankruptcy Judge.

McClung Lumber Company, Inc. ("McClung"), a subordinate Deed of Trust

noteholder, filed this motion for relief from the stay of 11 U.S.C. § 362 to enable J. Albert Ellett, Indenture Trustee, to finalize a foreclosure. The Debtor resists the motion and seeks leave pursuant to the Chapter 13 Plan to cure default in accordance with 11 U.S.C. § 1322(b)(5).

The facts are stipulated as follows:

"(1) John T. Chitwood filed a petition for relief in this court under Chapter 13 on May 20, 1985.

(2) On December 23, 1983, John T. Chitwood, Jr., executed a deed of trust dated December 22, 1983, wherein he conveyed certain property located in the County of Roanoke, Town of Vinton, State of Virginia, to John B. Weld and J. Albert Ellett, Trustees, in trust to secure to McClung Lumber Company, Inc., a certain note dated December 22, 1983, in the amount of $5,000.00, with interest thereon at the rate of 12% per annum, payable on demand. This deed of trust was recorded on December 28, 1983, in the Clerk's Office of the Circuit (sic) for the County of Roanoke in Deed Book 1201, Page 135.

(3) Upon recordation of the Deed of Trust described in paragraph 2 above, McClung Lumber Company, Inc. held the second lien against the herein described property, Colonial American National Bank having previously recorded a Deed of Trust against the same property, which Deed of Trust was admitted to record in "the Clerk's Office of the Circuit Court of the County of Roanoke in Deed Book 1199, Page 602. On November 5, 1984, J. Albert Ellett, on behalf of McClung Lumber Company, Inc., made demand upon Mr. Chitwood for payment in full on the note.

(4) McClung Lumber Company, Inc., caused to be advertised in The Roanoke Times & World News, a notice of Trustee's Sale scheduling a sale of the property pledged in the deed of trust on January 30, 1985. This foreclosure sale was postponed by agreement between the parties.

(5) McClung Lumber Company, Inc., caused to be advertised a notice of Trustee's Sale for property pledged to them by Mr. Chitwood, which sale was advertised for public auction on May 15, 1985, which ad appeared in The Roanoke Times & World News on May 6, 1985 and May 13, 1985. Notice of the proposed foreclosure sale was sent to Mr. Chitwood at the property address on May 1, 1985. On May 15, 1985, J. Albert Ellett, Sole Acting Trustee, sold the property at public auction to David S. McClung, II, who purchased the property for the sum of $875.00, subject to the first deed of trust in favor of Colonial American National Bank, in the approximate amount of $42,568.65.

(6) Immediately following the sale, J. Albert Ellett, Sole Acting Trustee, prepared a Contract of Sale setting forth the price and terms of the sale, which "Contract was executed by himself and David S. McClung, II.

(7) Immediately following the foreclosure sale on May 15, 1985, J. Albert Ellett accepted a check in the amount of $100.00 from David S. McClung, II, with the balance due in ten days thereafter. Prior to conveying the property pursuant to the foreclosure sale, J. Albert Ellett received notice that John T. Chitwood, Jr. had filed a Petition in this Court.

(8) The real estate, which is the subject of this Motion, has been appraised by the Roanoke County Commissioner of Revenue's Office at a value of $52,100.00, and the parties stipulate that the value of the property is no less than that amount."

The petition recites a value of $58,000.00. The Stipulation reflects the Roanoke County tax appraisal of $52,100.00. The first Deed of Trust balance of $42,568.00 and the McClung note of $5,000.00, plus interest and expenses, clearly shows equity in the property.

McClung's motion relies exclusively upon this Court's decision in *In re Rolen*, 39 B.R. 260 (Bankr.W.D.VA 1983). However, reliance upon *Rolen* is misplaced.

The facts herein are substantially different from the facts in *Rolen*. There, the Indenture Trustee had advertised and auctioned the property to the highest bidder,

executed and delivered the Deed to the purchaser, and the Deed was recorded, thus completing the foreclosure process and excluding the property from the Debtor's estate prior to the petition being filed in this Court. Here, the Indenture Trustee advertised, held auction, prepared a memorandum of sale to the purchaser, and the petition was thereupon filed. No Deed was prepared, delivered, or recorded.

The movant relies upon the language in *Rolen* to the effect that, under Virginia law relating to foreclosure of trust deeds, upon the auction being held and memorandum of sale made, the sale is complete for purposes of enforcing specific performance as between the Trustee and the successful bidder and, as between Trustee and bidder, it is complete. It does not necessarily follow that the foreclosure is sufficiently complete to prevent a debtor from curing default. It does not foreclose the supremacy provisions enacted by Congress under 11 U.S.C. § 1322(b)(2), (3), which permit a distressed debtor to effect cure of default. The fact that Virginia statutory and case law may hold, for purposes of specific performance, that a foreclosure sale is complete does not prohibit the application of § 1322 where the sale is not sufficiently complete to remove the property from the status of property of the estate where the preparation, delivery, and recordation of a Deed to the purchaser is not finalized.

Recent cases in Virginia and elsewhere support this view. The Court must seek to ascertain the Congressional intent and apply same when making determinations under Chapter 13. In the recent case of *In re Kokkinis*, 22 B.R. 353 (Bankr.N.D.IL 1982), the court, interpreting § 1322, stated that "the attempt to save homesteads is one of the primary purposes and ends of Chapter 13 rehabilitation." Citing *First Investment v. Custer*, 18 B.R. 842, 846 (Bankr.S.D.OH 1982).

■ The recent case of *In re Ivory*, 32 B.R. 788, C.C.H. 69, 363 (Bankr.D.OR 1983), properly stated the principle that the right to cure default and reinstate an accelerated note is granted by federal Bankrupt-

cy law and cannot be frustrated by the law of any state. *See also In re Taddeo*, 685 F.2d 24, 28 (2nd Cir.1982); *In re Anderson*, 29 B.R. 563, 565 (Bankr.E.D.VA 1983); *In re Young*, 22 B.R. 620 (Bankr.N.D.IL 1982); *In re Thompson*, 17 B.R. 748 (Bankr.W.D.MI 1982); *In re Davis*, 16 B.R. 473, 8 B.C.D. 635 (Bankr.D.KS 1981). According to the views of the foregoing courts, the Bankruptcy Code establishes its own redemption design in lieu of state laws. *See* 2 *Collier on Bankruptcy* (15th ed.) 1322.01[3][E].

The court in *Ivory, supra,* stated:

"Section 1322(b)(5) itself does not in any way limit when a default may be cured. Instead, it provides for 'the cure of any default' as long as the proposed cure occurs within a reasonable time ... Had Congress intended state laws limiting cures to apply, § 1322(b) would have been unnecessary ... The general rule applicable to conflicts between state and federal law preempts state law to the extent there is a conflict."

The court in *Ivory* further stated that all steps taken to divest a defaulting debtor of his interest in real property may be voided by the court under § 1325(a)(5) at any time prior to the final divestment of the debtor's interest.

The Bankruptcy Court for the Eastern District of Virginia in *In re Community Investments Associates I*, 14 B.R. 211 (Bankr.E.D.VA 1981), held that a debtor retained interest as property of the estate following the Trustee's auction and memorandum of foreclosure. In that case, the Indenture Trustee held the foreclosure sale, knocked the property down to the highest bidder, and made memorandum to the purchaser. Certain insurance requirements could not be fulfilled, which were conditions of sale, and the court there held that the debtor retained, under the circumstances, an interest which was property of the estate. The court stated as follows as to an auction sale:

"... A bid is deemed accepted by an auctioneer 'when he knocks the land down and on making by him of a memo-

randum of the sale and its terms, signed [by him], the contract for the sale is ... complete', at least insofar as the trustee under the Deed of Trust can compel compliance with the purchaser's bid."

(Citing 13A *Michie's Jurisprudence,* Mortgages and Deeds of Trust, § 132, 1978 repl.)

At page 214, the court stated "the acceptance of the successful bid of a purchaser by the auctioneer constitutes an executory contract of sale" and, at page 215, "the court is of the opinion that at the conclusion of the foreclosure auction, Wills (successful bidder) had, at best, an executory contract for the purchase of the subject property", concluding that the property remained property of the debtor's estate.

With reference to the supremacy of the Code, in a recent case, *In re Marshall,* 15 B.R. 738 (Bankr.W.D.NC 1981), a foreclosure had been totally completed and title transferred. The court there held that even under those circumstances, such transfer may be voided as a fraudulent transfer under 11 U.S.C. § 548.

In further support of the lack of finality so far as the debtor is concerned, the cases hold that an Indenture Trustee is agent of the owner and the note-holding lienor. *See Feldman v. Rucker,* 201 Va. 11, 109 S.E.2d 379 (1959). He must act toward both with perfect impartiality. *See Powell v. Adams,* 179 Va. 170, 18 S.E.2d 261 (1942). Many uncertainties may arise preventing completion of a sale, in which event the Trustee remains the agent and subject to the control of the owner and the owner retains interest in the property, the Court held in *Community Investment, supra.*

 Since the executory contractual posture creates rights in the owner and remains property of the estate and subject to having default cured, no undue prejudice will result where the Trustee is compensated for his services where an incomplete sale is voided under the provisions of 11 U.S.C. § 1322. Further, permitting such cure of default carries out the intent of Congress in their desire to benefit and rehabilitate distressed debtors.

Accordingly, it is

ADJUDGED and ORDERED

that the Debtor be, and is hereby permitted to cure the default under the proposed Plan or modified Plan, and relief from the stay of 11 U.S.C. § 362 is DENIED. Leave is granted to McClung to file proper secured claim along with a claim for administrative expenses incurred in the foreclosure. Each party shall bear their respective costs.